61 N.J. 76 (1972)
293 A.2d 164
RAYMOND A. YOUNG, ET ALS., PLAINTIFFS-APPELLANTS,
v.
THE BOARD OF HEALTH OF THE BOROUGH OF SOMERVILLE, ET ALS., DEFENDANTS-RESPONDENTS.
The Supreme Court of New Jersey.
Argued March 7, 1972.
Decided June 23, 1972.
*77 Mr. James R. Hillas, Jr., argued the cause for appellants.
Mr. Richard H. Thiele, Jr., argued the cause for respondents, Boards of Health of the Townships of Bridgewater and Branchburg, and the Boroughs of Somerville and Raritan (Messrs. Wharton, Stewart and Davis, attorneys).
Mr. Russell Fleming, Jr., argued the cause for respondents, Somerville Water Company and Elizabethtown Water Company (Messrs. Sailer, Fleming and Raczkowski, attorneys).
The opinion of the Court was delivered by MOUNTAIN, J.
This case questions the validity of the proposed fluoridation of a public water supply, an issue which has apparently not hitherto come directly before the courts of this state.
Between May and September, 1970, the Boards of Health of the Boroughs of Raritan and Somerville and of the Townships of Branchburg and Bridgewater, all in Somerset County, adopted resolutions requesting their common supplier of drinking water, Somerville Water Company, henceforth to supply water containing one part fluoride to each one million parts of water (1 p.p.m.) Plaintiffs, all of whom are taxpayers and residents of one or other of the affected municipalities, instituted this suit seeking injunctive relief against the proposed action and an adjudication that the resolutions were invalid. Upon the return day of the order to show cause why a preliminary injunction should not issue, plaintiffs moved for summary judgment. The motion was denied. By stipulation of counsel, and with the consent of the trial judge, it was agreed that the court's decision would be given the effect of a summary judgment in defendants' favor.
Plaintiffs appealed to the Appellate Division and this Court certified the case upon its own motion. R. 2:12-1.
*78 Studies and experiments made over the past quarter century have established with considerable scientific certainty that in communities where public drinking water contains controlled amounts of fluoride, the incidence of dental caries (tooth decay) is dramatically less than in communities where the drinking water lacks this ingredient. Apparently fluoride in drinking water tends to harden tooth enamel, making teeth more resistant to decay. This beneficial effect is far more noticeable in children than in adults. With the addition, in 1967, of New York City's eight million residents, the number of persons drinking fluoridated water in the United States reached a total of sixty-five million. Clark & Sophy, Fluoridation: The Courts and the Opposition, 13 Wayne L. Rev. 338 (1967).[1]
Although no harmful results from fluoridation have been clearly proven and it has no effect upon the color, taste or odor of water and despite the health benefits that are clearly derived, proposals to fluoridate drinking water have encountered extraordinary opposition and antagonism. The generative forces of this hostility are not easily identified but have found expression in a variety of arguments. It is contended, variously, that there is a lack of statutory authority for the municipal action; that even if adequate statutory authority can be inferred, fluoridation is an abusive exercise of police power and as such is constitutionally offensive; that it prohibits the free exercise of religion by imposing medication upon those who would resist it; and that it otherwise constitutes a deprivation of personal liberties. The courts throughout the nation have *79 been virtually unanimous in resisting these as well as other arguments, and in upholding fluoridation of drinking water as a valid public health measure whenever a challenge has been presented. De Aryan v. Butler, 119 Cal. App.2d 674, 260 P.2d 98 (1953), cert. den. 347 U.S. 1012, 74 S.Ct. 863, 98 L.Ed. 1135 (1954); Opinion of the Justices, 243 A.2d 716 (Del. 1968); City Commission of City of Fort Pierce v. State ex rel. Alterhoff, 143 So.2d 879 (Fla. App. 1962), app. dis. 154 So.2d 208 (1963); Schuringa v. City of Chicago, 30 Ill.2d 504, 198 N.E.2d 326 (1964), cert. den. 379 U.S. 964, 85 S.Ct. 655, 13 L.Ed.2d 558 (1965); Wilson v. City of Council Bluffs, 253 Iowa 162, 110 N.W.2d 569 (1961); Graybeal v. McNevin, 439 S.W.2d 323 (Ky. 1969); Chapman v. City of Shreveport, 225 La. 859, 74 So.2d 142 (1954), app. dis. 348 U.S. 892, 74 S.Ct. 216, 99 L.Ed. 701 (1954); Attaya v. Town of Gonzales, 192 So.2d 188 (La. App. 1966); Rogowski v. City of Detroit, 374 Mich. 408, 132 N.W.2d 16 (1965); Readey v. St. Louis County Water Co., 352 S.W.2d 622 (Mo. 1961), app. dis. and cert. den. 371 U.S. 8, 83 S.Ct. 20, 9 L.Ed.2d 47 (1962), reh. den. 371 U.S. 906, 83 S.Ct. 203, 9 L.Ed.2d 167 (1962); Paduano v. City of New York, 17 N.Y. 2d 875, 271 N.Y.S.2d 305, 218 N.E.2d 339 (1966), cert. den. 385 U.S. 1026, 87 S.Ct. 754, 17 L.Ed.2d 674 (1967); Stroupe v. Eller, 262 N.C. 573, 138 S.E.2d 240 (1964); Kraus v. City of Cleveland, 163 Ohio St. 559, 127 N.E.2d 609 (1955), app. dis. 351 U.S. 935, 76 S.Ct. 833, 100 L.Ed. 1463 (1956); Dowell v. City of Tulsa, 273 P.2d 859 (Okla. 1954), cert. den. 348 U.S. 912, 75 S.Ct. 292, 99 L.Ed. 715 (1955); Baer v. City of Bend, 206 Or. 221, 292 P.2d 134 (1956); Hall v. Bates, 247 S.C. 511, 148 S.E.2d 345 (1966); Kaul v. City of Chehalis, 45 Wash.2d 616, 277 P. 2d 352 (1954); Birnel v. City of Fircrest, 53 Wash.2d 830, 335 P.2d 819 (1959), app. dis. 361 U.S. 10, 80 S.Ct. 71, 4 L.Ed.2d 51 (1959), reh. den. 361 U.S. 904, 80 S.Ct. 204, 4 L.Ed.2d 159 (1959); Froncek v. *80 City of Milwaukee, 269 Wis. 276, 69 N.W.2d 242 (1955). The unanimity of appellate state court holdings is matched only by the frequency and persistent regularity with which the United States Supreme Court has declined review.
In the case before us it is initially urged that the local boards of health lacked authority to adopt the resolutions requesting fluoridation. We cannot agree.
The Legislature allocated to the State Department of Health the responsibility of formulating "comprehensive policies for the promotion of public health and the prevention of disease within the State." N.J.S.A. 26:1A-37. Specifically this statute directed the Department to "encourage, direct and aid in co-ordinating local programs concerning control of preventable diseases in accordance with a unified State-wide plan....," to "administer or supervise a program of ... child health services, encourage and aid in co-ordinating local programs concerning ... infant hygiene" and "administer or supervise a program of dental health, [and] encourage and aid in co-ordinating local programs concerning dental health." Additionally the State Commissioner of Health was specifically authorized to do the following:
i. Cause studies to be made to determine whether the recognized public health activities of local health departments are being conducted and whether minimum standards of performance are being met in all municipalities of the State and for the purposes of this subsection, the commissioner shall recommend and the Public Health Council shall prescribe what are to be considered as "recognized public health activities" and "minimum standards of performance";
j. Require local boards of health to establish and maintain a program of recognized public health activities and to meet minimum standards of performance as prescribed by the Public Health Council in accordance with the provisions of subsection "i" of this section. [N.J.S.A. 26:1A-15]
We pause to emphasize the hierarchical effect of this statute. Within the rather wide area of its application it clearly places state authorities above local authorities. To the extent that recognized public health activities are defined *81 and minimum standards for their performance established at the state level, these decisions are binding on local boards of health.
Pursuant to this statute, the Public Health Council of the New Jersey State Department of Health prescribed certain Recognized Public Health Activities and Minimum Standards of Performance for Local Health Departments in New Jersey, to take effect April 1, 1961. These included, under the heading, Dental Health, the following:
50.2 Promote controlled adjustment of fluoride content of public water supplies to the optimum protective level of 1 p.p.m.
In 1970 all of the functions, powers and duties theretofore exercised by the Department of Health and by the Commissioner of Health, having to do, inter alia, with waters of this State and with potable water supplies were transferred to The Division of Environmental Quality and the Commissioner of the Department of Environmental Protection. N.J.S.A. 13:1D-7. The same enactment also provided that this transfer should not affect orders, rules or regulations theretofore adopted by the predecessor agency. N.J.S.A. 13:1D-15. Thus the quoted directive persists as an ongoing regulation of the Department of Environmental Protection.
Effective October 1, 1967, the Department of Conservation and Economic Development, which at the time shared certain responsibilities with respect to water policy and supply, N.J.S.A. 13:1B-47, et seq., included in its promulgated Potable Water Standards, a statement that fluoride should be present in water intended for potable purposes in recommended concentration of not more than 1.5 p.p.m. and not less than 1 p.p.m. The Department of Conservation and Economic Development was, in 1970, reorganized to become the Department of Environmental Protection, N.J.S.A. 13:1D-1, and the same legislation mentioned above, N.J.S.A. 13:1D-15, gave to these Standards continuing vitality.
*82 It therefore seems abundantly clear that the local boards of health, in requesting the private utility that supplies drinking water to their municipalities to fluoridate at a concentration of 1 p.p.m., were merely implementing a policy that had been clearly announced by the arm of state government charged with overall responsibility in this area of public health.
Where, as here, a policy decision in the field of public health has been taken at the state level, the proper function of local boards of health is undoubtedly to implement and carry out such decisions. We are therefore not faced with the question as to whether, absent any authoritative announcement of policy at the higher level, a local board of health could, on its own initiative, undertake to fluoridate the municipal supply of drinking water. We are mindful, however, of the broad grant of power to enact and amend health ordinances contained in N.J.S.A. 26:3-64, and as this court observed upon an earlier occasion,
Local boards of health are governmental agencies created in every municipality under statutory mandate, N.J.S.A. 26:3-1, et seq., for the purpose of exercising locally the inherent police powers of the State respecting matters of public health. [Bd. of Health of Tp. of Scotch Plains v. Pinto, 57 N.J. 212, 214 (1970)]
Although we need not decide the point, there would appear to be no impediment to appropriate local action, absent any mandate at the state level.
Finally, it is argued that the defendant boards of health were bound to act by ordinance rather than by resolution. We see no merit to this contention. Viewing the local action as responsive to the policy pronouncement of the State, it was no more than a request and certainly not legislative in nature. Where a general rule or declaration of policy has already been made, its particular implementation by a board of health will normally take the form of a resolution. Courter v. Board of Health of City of Newark, 54 N.J.L. 325 (Sup. Ct. 1892). The several resolutions *83 did no more than request the water utility to go forward with a program that had already been approved, if not indeed directed, by higher authority. Clearly no ordinance was needed.
The judgment of the trial court is affirmed.
For affirmance  Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, SCHETTINO and MOUNTAIN.  6.
For reversal  None.
NOTES
[1] The same article lists over fifty well-known national organizations that have adopted policies favorable to fluoridation. These include American Cancer Society, American Nurses Association, American Hospital Association, United States Department of Defense, American College of Dentists, American Pharmaceutical Association, American Dental Association, American Medical Association. American Public Health Association, United States Department of Health, Education and Welfare, Food and Drug Administration and the Public Health Service. Clark & Sophy, supra, at 342.