132 N.J. Super. 572 (1975)
334 A.2d 386
CEDAR PARK CEMETERY, A NON-PROFIT CORPORATION, PLAINTIFF,
v.
BERNARD HAYES, BOROUGH OF PARAMUS, A MUNICIPAL CORPORATION, CEMETERY BOARD, STATE OF NEW JERSEY, AND ATTORNEY GENERAL, STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided February 28, 1975.
*574 Mr. George A. Vaccaro for plaintiff Cedar Park Cemetery (Messrs. Vaccaro, Osborne & Curran, attorneys; Mr. William Boorstein, of counsel).
Mr. Joseph S. DiMaria for defendants Bernard Hayes and Borough of Paramus.
Mr. Michael E. Goldman, Deputy Attorney General for defendants Cemetery Board and Attorney General (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
SMITH, HARVEY J.C.C., Temporarily Assigned.
On February 7, 1974 the board of trustees of Cedar Park Cemetery adopted a resolution authorizing construction of a mausoleum on existing cemetery property in the Borough of Paramus. Plans and specifications were prepared for a structure large enough to hold more than 5300 crypts. A sales force was established and immediately launched a full scale "pre-need" sales campaign. Promotional literature was printed and disseminated. Advance sales were solicited through repeated newspaper advertisements. In seven months this nonprofit corporation expended approximately one-quarter million dollars on these preliminaries before application was made for a building permit.
*575 For more than 30 years the 98.6-acre tract on which the mausoleum is to be erected has been continuously and exclusively used for cemetery purposes. To the north and west of the subject property are other cemeteries, making plaintiff's land part of a 400-acre contiguous cemetery area. To the south and east are public streets, across from which is land designated as residential by the local zoning code. The proposed building is to be set back 1300 feet from the street on its southerly boundary and 760 feet from the street on its easterly boundary. It is an architecturally attractive building, 227 feet wide, 102 feet deep, 38 feet at its highest point. Most of the building would be 32 feet in height. In addition to the actual crypt space, there are provisions for a chapel area, lobby, reception rooms, offices, lounge and bathrooms.
On September 12, 1974 application was made to the municipal building inspector for a permit to construct this mausoleum. N.J.S.A. 8A:3-14(a). The building inspector denied the application, citing as his reason for denial Paramus
Ordinance 73-36, Art. 13M, adopted December 12, 1973 which declares a crematory or mausoleum as a prohibited use throughout the borough. On September 25, 1974 the full detailed plans and specifications were presented by the plaintiff to the State Department of Environmental Protection (DEP) for examination and approval before the commencement of building. N.J.S.A. 8A:3-14(b).[1] After denial by the building inspector, Cedar Park instituted this suit to compel the issuance of the necessary building permit. The Attorney General and the New Jersey Cemetery Board were served with notice of the action as parties deemed necessary to protect the public interest. N.J.S.A. 8A:2-3.
Plaintiff, Attorney General and Cemetery Board all assert the position that the New Jersey Cemetery Act of 1971 has divested the local building inspector and the municipality of *576 all authority in connection with mausoleum construction on existing cemetery property and that the State has totally preempted local regulation in this area. The building inspector and the municipality aver that the Cemetery Act of 1971 not only recognized a need for home rule control but, in fact, restated the existing law and reaffirmed the fact that local approval is a prerequisite in construction of this type.
To resolve this quandary, we must, for the first time, interpret our relatively recent Cemetery Act and, in particular, the express language of N.J.S.A. 8A:3-14, in the light of its legislative history. See 2A Sutherland Statutory Construction (Sands ed. 1973), § 48.03 at 191; N.J. Ins. Underwriting Ass'n v. Clifford, 112 N.J. Super. 195, 200 (App. Div. 1970).
Since 1875 the New Jersey Legislature has recognized the need to regulate places of interment. The method of cemetery incorporation and management was the focus of initial legislation. L. 1879, c. 162, § 1. No statutory financial control of cemeteries was provided during this early period. Unmaintained cemeteries were presenting local authorities with public health and welfare problems. The Legislature acted, not through penalties to cemetery companies, but by enabling municipalities to condemn unkempt cemeteries and reimburse plot owners through issuance of temporary obligation bonds. L. 1910, c. 238, § 1.
A separate enactment concerning mausoleums was promulgated by the Legislature in 1916. L. 1916, c. 233, § 1 et seq. It set forth materials to be used in construction, established a maintenance trust fund and provided tax exempt status when erected in a cemetery. This law remained substantially unchanged, until the most recent Cemetery Act revision, except that tax exemption was not specified in R.S. 26:6-42 to 49.
Subsequent to the original Mausoleum Act the Legislature further regulated cemeteries in 1939 by including trust fund requisites and more explicit language as to management and control. R.S. 8:1-1 et seq. However, broad loopholes in the language made cemeteries prime targets for financial speculation. *577 With no central board to implement the act and set standards, numerous cemeteries ended in financial disaster. George Wash., etc. v. Memorial, etc. Co., 139 N.J. Eq. 280 (Ch. Div. 1947); cf. Eliasberg, "Does the Knollwood Decision Augur an End to Cemetery Bootstrap Deals?" 27 J. of Taxation 224 (1967). Mausoleums were subject to equally egregious financial practices which often resulted in bankruptcy. Moore v. Fairview Mausoleum Co., 39 N.J. Super. 309 (App. Div. 1956).
Additionally, cemeteries were selling grave markers and monuments while enjoying a tax exempt status. Profits were being realized from such sales until private entrepreneurs successfully petitioned the courts to halt this unfair competition which interfered with their prospective business advantage. Terwilliger v. Graceland Memorial Park Ass'n, 35 N.J. 259 (1961); Frank v. Cloverleaf Park Cemetery Ass'n, 29 N.J. 193 (1959); Di Cristofaro v. Laurel Grove Memorial Park, 43 N.J. Super. 244 (App. Div. 1957). The courts proscribed these sales because "[a] public cemetery is a public charitable trust and its operation for private profit offends public policy." Di Cristofaro, supra at 255.
Numerous suits demanding accountings from bankrupt cemetery companies, coupled with many cases indicating private profit motives, plus citizens' complaints to the Attorney General, culminated in legislative hearings concerning revision of the Cemetery Act. N.J. Senate Committee on Business Affairs, Public Hearings on S. 365 and 429, August 3, 17, 31 1966 (hereinafter hearings). During the five-year period before and after these hearings, eight bills concerning cemeteries died in this Senate committee: S 350 and 376 (1964), S. 365 and 429 (1966), S. 168 and 509 (1967), S. 204 (1968), and S. 568 (1969). Funeral directors and cemetery associations were perennial adversaries with respect to all bills introduced. Neither group had wanted any cemetery controls, but realizing the ineluctable course of events, each had submitted for sponsorship and introduction a bill aimed at economic controls which would preserve its own interests. *578 Testimony reflected crosscharges of exorbitant profit making at the public's expense. Hearings, supra August 3, 1966; cf. Eliasberg, supra. The long, hard legislative battle finally terminated with the promulgation of the New Jersey Cemetery Act of 1971. N.J.S.A. 8A:1-1 et seq.
N.J.S.A. 8A:3-14 (1974-5 supp.) deals with mausoleum construction and provides in part that
No person shall build, construct or erect, wholly or partially above or below the surface of the ground, a public mausoleum, vault, crypt or other structure intended to hold or contain dead bodies, without obtaining a building permit from the building inspector of the municipality in which it is proposed to build or erect said structure. A denial or failure to issue said permit shall be reviewable in the Superior Court by a proceeding in lieu of prerogative writ. [Emphasis supplied]
This statutory language expressly directs the avenue of appeal from a building inspector's refusal to the Superior Court. It provides a procedural detour from the normal road followed to the local board of adjustment. See Kingsley v. Wes Outdoor Advertising Co. 55 N.J. 336 (1970); Blasi v. Ehret, 118 N.J. Super. 501 (App. Div. 1972). Specific inclusion of mausoleums as a cemetery use ended the confusion that had resulted under the previous laws wherein mausoleums and cemeteries were controlled under separate titles. R.S. 26:6-42 to 48; R.S. 8:1-1 et seq.; Moore v. Fairview Mausoleum Co., supra. A municipality may not override such expressly permitted use because its zoning powers are confined to areas delegated, and "[w]ithout express statutory authority a municipal corporation cannot under its police power suppress that which the state by its legislature permits." 6 McQuillin, Municipal Corporations (3d ed. 1969), § 24.46 at 571. Therefore, Paramus Ordinance 73-36, Art. 13M, is invalid as applied.
We next turn to the classification of the cemetery lands as residential. By designating existing cemetery property as residential, the municipality would label such use as nonconforming. The logical extension of this contention *579 would be that every time a grave were opened, it would be an expansion of a nonconforming use that would require application to the board of adjustment for a variance. Cemetery land is dedicated to all permissible statutory uses once the municipality has exercised its limited discretion and permitted the use within its boundaries. N.J.S.A. 8A:6-5. It cannot subsequently restrict that continued use on such land by redesignating the area under its zoning powers. The only time such redesignation might come into play would be upon abandonment of the lands as a cemetery use. N.J.S.A. 8A:8-1 et seq.
State involvement in mausoleum construction is specified in N.J.S.A. 8A:3-14(b) (1974-75 Supp.), as follows:
b. Full detailed plans and specifications of said structure shall be presented to the State Department of * * * Environmental Protection for its examination and approval before the commencement of the erection thereof. Before approving the plans and specifications the State Department of * * * Environmental Protection shall be satisfied that the mausoleum proposed to be constructed can be operated and maintained without constituting a hazard to public health or safety.
The approval of the plans and specifications by the State Department of * * * Environmental Protection shall be evidenced by a certificate in writing, properly signed, which certificate with the detailed plans and specifications so approved shall, before work is begun on the structure, be filed in the office of the clerk of the county wherein the structure is to be erected and there remain as a public record.
Under previous law the State Department of Health reviewed the plans according to statutory specifics regarding exterior construction as well as interior sealing of crypts. R.S. 26:6-42. But R.S. 26:6-42 through 48 were specifically repealed by N.J.S.A. 8A:12-2. Uncontradicted testimony established that mausoleum plans are only referred to the Division of Water Resources in the DEP and the Division only reviews plans in terms of drainage and sewerage problems. The DEP conceives that its only function, as determined from the enabling statutes and administrative guidelines, is to review construction plans to insure that sewerage *580 facilities are commensurate with the size of the building and that materials used in sewerage connections adequately prevent effluent discharge into subterranean streams. Drainage in terms of storm run-off is also checked by the Department. N.J.A.C. 7:9; N.J.S.A. 13:1D-7; N.J.S.A. 58:10-1 et seq.; N.J.S.A. 32:11D-1 et seq.; N.J.S.A. 26:2E-1 et seq. The source statutes are relevant because when the Water Resources Division was created by the legislature the enactment "also provided that this transfer should not affect orders, rules or regulations theretofore adopted by the predecessor agency." Young v. Somerville Bd. of Health, 61 N.J. 76 (1972); N.J.S.A. 13:1D-7. The objectives of this Division are to integrate and promote modern sanitary sewerage throughout the State. N.J.A.C. 7:9-1.6.
We are not here dealing with an enabling statute that sets out specific standards upon which DEP discretion may be exercised. Cf. Elizabeth v. Sullivan, 125 N.J. Super. 569 (App. Div. 1973); N.J.S.A. 55:13A-1 et seq. Nowhere in the statutes, rules or regulations is there reference to DEP control of mausoleum exterior construction or guidelines for other health and safety considerations. These aspects of mausoleum construction are consequently outside the DEP's purview.
The Administrative Code directs that local ordinances more stringent than state directives will take precedence. N.J.A.C. 7:9-10.8. Even in this limited area of review, concurrent jurisdiction exists. See In re Adoption of Regulations, 127 N.J. Super. 295 (App. Div. 1974); Schwerman Trucking v. Dept. Environmental Protection; 125 N.J. Super. 14 (App. Div. 1973).
Keeping in mind that statutes must be construed as a whole with reference to the entire system of which they form a part, and effectuated in accordance with what reasonably seems to be the legislative intention, we must now discuss local control of mausoleum construction. See East Orange v. Livingston Tp., 102 N.J. Super. 512 (Law Div. 1968), aff'd 54 N.J. 96 (1969); N.J. Ins. Underwriting *581 Ass'n. v. Clifford, supra; Jantausch v. Verona, 41 N.J. Super. 89, 98 (Law Div. 1956); 2A Sutherland, Statutory Construction (Sands ed. 1973), § 51.01 at 288, § 51.03 at 298.
Under the new Cemetery Act each municipality retains a substantial residuum of power. They may exclude new cemeteries or prevent territorial expansion of cemeteries within municipal boundaries. N.J.S.A. 8A:6-5; see Clifton v. Cresthaven Cemetery Ass'n, Inc., 136 N.J. Eq. 56 (Ch. 1944). The necessary compliance by a cemetery or mausoleum with local regulations is expressed in several sections. N.J.S.A. 8A:3-2; N.J.S.A. 8A:10-4. Significantly, the Legislature left with municipalities the power to enact ordinances pertaining to interment. N.J.S.A. 26:6-2, 5, 36, 40. With regard to mausoleum construction, application must be made for a building permit; the municipal building inspector issues the building permit, supervises construction and must certify the structure before use. N.J.S.A. 8A:3-14(a), (c), (d).
Why place this responsibility on the local building inspector? The answer may be found by reference to cognate statutes. Coast Cigarettes Sales v. Long Branch Mayor and Council, 121 N.J. Super. 439 (Law Div. 1972). Appointments of municipal building inspectors and prescription of their duties is a local function. N.J.S.A. 40:48-1; N.J.S.A. 40:171-58. Pursuant to these statutes Paramus created the office of building inspector, whose ministerial function includes reviewing plans to insure compliance with municipal ordinances and codes as well as any state statutes applicable to such construction. Paramus Building Code, Ordinance 338, as amended by Ordinance 563 (1968).
The Legislature has not in the Cemetery Act taken away the duties of the building inspector. Examples of legislative preemption of the duties of a building inspector by specific fiat in other instances are illustrated in several areas. Construction of a school building was held outside the local inspector's ambit because the State Board of Education *582 supervises and controls that construction. N.J.S.A. 18A:18-24, 25; Kaveny v. Montclair Bd. of Com'rs, 69 N.J. Super. 94 (Law Div. 1961), aff'd 71 N.J. Super. 244 (App. Div. 1962). Similarly, the Hotel & Multiple Dwelling Law places building inspection under the State's aegis. N.J.S.A. 55:13A-1 et seq.; Metzger, "Statewide Code Enforcement  New Jersey, The Test Case," 27 Rutg. L. Rev. 659 (1974). Preemption by the Federal Government in construction of postoffices and public housing has been held to preclude local inspection. But in those instances where the federal legislation is totally devoid of references to the locality, provision is made for federal supervision and, therefore, the superior position of the governmental authority is said to control interpretation. 39 U.S.C.A. § 404; Thanet Corp. v. Princeton Tp., 104 N.J. Super. 180, 183 (Law Div. 1969), aff'd 108 N.J. Super. 65 (App. Div. 1969). Therefore, the municipal building inspector's duty with regard to mausoleums is to enforce all local and state regulations.
State preemption of a specific legislative subject may be inferred when the matter controlled by statute necessitates a uniform state scheme. Rutgers v. Piluso, 60 N.J. 142 (1972); Hill v. Collingswood, 9 N.J. 369 (1952). No exigency due to dearth of burial space has been shown to presently exist in New Jersey, nor was it the demonstrated impetus for the Legislature's incorporation of mausoleums in the new Cemetery Act. The only necessity for uniformity expressed in the statute is in regard to financing and sewerage. Hearings, supra; N.J.S.A. 8A:1-1 et seq.; see statement of Gov. William T. Cahill upon signing S.877 into law (December 1, 1971).
Defendant Borough of Paramus is here confronted with a project of considerable dimension. The entire center portion of the proposed structure consists of chapel and office space covering approximately one-third the total building area. Wings appended on either side house tiers of crypts. While chapel and office may be construed as accessory *583 cemetery uses, such facilities change the basic character of the structure from merely a sepulcher for human remains to a public accommodation wherein people will be working and visiting on a regular basis.
In its zeal to completely exclude mausoleums the municipality has failed to regulate setback distances, building dimensions and construction standards. DEP "regulates" some aspects of drainage and the structure of the internal crypts. Based upon this meager and cursory review, as evidenced by an almost nonexistent file and staff, DEP is apparently prepared to certify this building for construction. Under these circumstances a holding of complete state preemption would arrogate untrammeled freedom to cemetery companies to build mausoleums without any agency having authority to regulate construction design. Design and engineering of plumbing and electrical systems, as well as the basic foundation and roof structure would be unchecked. Legislative history indicates that cemetery companies must not be left free from such regulation.
Defendant Borough of Paramus will have 30 days to promulgate an ordinance establishing criteria for mausoleum construction in accordance with this opinion. In the event that the borough does not act within the allotted time, a building permit will be ordered forthwith. Jurisdiction is retained.
NOTES
[1] The DEP has completed its examination and is now prepared to issue the necessary certificate of approval required by the statute.