# Dayne Baird, Appellant, *v.* Zoning Board of Adjustment of Slippery Rock Borough, Pennsylvania, Appellee.

Argued May 5, 1975, before President Judge BOW-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Gary L. Farren,* for appellant.

*Robert F. Hawk,* for appellee.

OPINION BY JUDGE KRAMER, July 14, 1975:

This is an appeal by Dayne Baird (Baird) from an order dated May 22, 1974, of the Court of Common Pleas of Butler County affirming an adjudication of the Zoning Board of Adjustment (Board) of Slippery Rock Borough (Borough) which, in effect, determined that Baird could not continue the use of his property as a rooming house because of an adandonment of such nonconforming use for more than one year.

For an understanding of our decision in this case we must set forth certain pertinent facts. The property in question is a frame dwelling house commonly known as 328 South Main Street, located in the Borough of Slippery Rock. In 1965 the property was owned by James G. Bouch (Bouch) who entered into a lease with a fraternity representing students at Slippery Rock College for a five-year term commencing October 1, 1965 and ending September 30, 1970. For reasons not specifically stated in the record, a dispute arose between Bouch and the fraternity. On November 21, 1969, the Borough shut off the water supply to the property on the request of some unknown person. The fraternity which occupied the house had been responsible for the water bills, and apparently those bills had all been paid at the time of the hearing. At the request of Bouch, on November 22, 1969, water service was reinstituted in the name of Bouch. At that time a water meter reading was made, which revealed that, for a period of 21 days, persons occupying the property had consumed 9,000 gallons of water, indicating to the Borough that the property was occupied by a number of people in excess of what it considered average family usage.

The record is not specific with regard to when the fraternity students left the premises, but, in any event, the

record is quite clear that during the month of July 1970, Baird, together with his brother and two other persons, occupied the premises pursuant to an oral lease with Bouch under which Baird was to pay $20 a month and make certain repairs. The record is also clear that the fraternity had left the premises in a state of shambles.

On September 22, 1970, the water meter was again read, indicating that for the 10-month period beginning November 22, 1969, the occupants of the building used only 3,000 gallons of water. On this later date, September 22, 1970, the water service was again terminated. On December 31, 1970, at the request of Baird, the water service was restored. It should be noted at this point that on July 27, 1970 Bouch wrote a letter to David Baird, the appellant's brother, verifying the terms of the lease mentioned above and noting that any further negotiation concerning rental would be subject to the then existing lease with the fraternity. Bouch's letter also pointed out that there was litigation prohibiting him (Bouch) from doing "anything" until October 1, 1970. On December 31, 1970, Bouch conveyed the property to the two Baird brothers. The deed contains a proviso permitting Baird to void the deed if Baird could not continue to use the premises as "a rooming or boarding house."

On January 19, 1971, the Borough, through E. A. Fleeger (Fleeger), its "zoning and housing official," issued an "order to remedy violation" in which Baird was given notice that "an apparent attempt is being made to reestablish a use not permitted in the R-3 zone—2) an apparent attempt is being made to occupy this structure as a *Rooming House* without the required Rooming House Occupancy Permit. in violation of 4.130 and 7.310 Sections of Ordinance #242 . . . Section 10.1 of Ordinance #258. ((Sic.) Emphasis added.) The order portion of this document reads:

"YOU ARE THEREFORE DIRECTED AND ORDERED to comply with the law and to remedy the

conditions above mentioned forthwith and no attempt be made to occupy the above as a Rooming House until compliance is determined."

Alleging that he was merely continuing a nonconforming use, Baird requested a hearing which was held March 17, 1971. Thereafter, on March 23, 1971, the Borough secretary notified Baird, by letter, that the decision of the Board "was to the effect there has been a violation of Article 7 - Section 7.310."

The matter was appealed to the court below which held a complete hearing *de novo* on January 24, 1974. Three witnesses testified, *i.e.*, the Baird brothers and Fleeger. On May 22, 1974, the court issued its opinion and order in which it found that the prior nonconforming use of the property had been as a "dormitory," which was permitted in an R-3 zone as "a special use." The court found as a fact that it did not believe Baird's contention that four students lived in the property during July of 1970 and that the property was not used as a fraternity home or dormitory from November 21, 1969 until December 31, 1970. The court concluded that by virtue of the non-use of the property, the nonconforming use had been abandoned. This appeal followed.

Our scope of review in cases where the court below received additional evidence and testimony is to determine whether the court, rather than the Board, abused its discretion or committed an error of law. *Township of Neville v. Exxon Corporation,* 14 Pa. Commonwealth Ct. 225, 322 A. 2d 144 (1974) and *Camp Hill Development Co., Inc. v. Zoning Board of Adjustment, Borough of Dauphin,* 13 Pa. Commonwealth Ct. 519, 319 A. 2d 197 (1974). Although the court below at the hearing requested that the parties make the zoning ordinance of the Borough a matter of record, this Court was supplied only with Section 2.22 of the ordinance, defining "dormi-

tories,"[1] section 7.230 (c), providing "[a] nonconforming use which is permitted in any district or which is permitted only as a special use may only be changed into a conforming one" and section 7.130, defining "abandonment."[2] Apparently the term "fraternity house" is not specifically defined anywhere in the ordinance. Also, apparently the term "rooming house" is defined in the zoning ordinance, but we do not have the benefit of that definition.

We must reverse the order of the court below for the following reasons. We first note that the initial order which brought about this lawsuit notified Baird that he was in violation of the zoning ordinance because he intended to continue the use of his property as a "rooming house" which required a "rooming house occupancy permit." That notice specifically referred to two sections of the zoning ordinance, i.e., sections 4.1370 and 7.310. After the hearing before the Board, Baird was found to be in violation of section 7.310 of the ordinance. No mention was made in the adjudication regarding whether it was based upon the Board's determination that Baird was operating a rooming house or a dormitory. The court below found that Baird was in violation of the zoning ordinance because he was operating a dormitory, and this is the first time in the record that Baird was notified of any such violation. The Borough, in its brief, contends that this ordinance draws definite distinctions between

---

1. Section 2.221 defines dormitory as "(a) building, whether public or private, associated with a school, college or university designed for, used and arranged with rooms providing sleeping, studying and living accomodations [sic] for students."

2. Section 7.310 defines "abandonment" as: "The discontinuance of a nonconforming use for a period of one (1) year and/or the change of use to a more restricted or conforming use for any period of time shall be considered an abandonment of and such nonconforming use shall not thereafter be revived. Intent to resume active operation shall not affect the foregoing except as provided in Section 7.230 Paragraph (d)."

the terms "dormitory," "fraternity house" and "rooming house." Accepting that contention, due process of law requires that the Borough notify a citizen of what portion of the zoning ordinance he is being accused of violating. While we have noticed over the years that parties, municipalities and courts loosely apply statutory and ordinance definitions and procedures, we cannot condone such looseness. *General Electric Corporation v. Commonwealth of Pennsylvania, Human Relations Commission,* 18 Pa. Commonwealth Ct. 316, 334 A.2d 817 (1975); *Pittsburgh Press Employment Advertising Discrimination Appeal,* 4 Pa. Commonwealth Ct. 448, 287 A. 2d 161 (1972); *aff'd.,* 413 U. S. 376 (1973).

Certainly, if Baird had been advised that he was being charged with a violation of the zoning ordinance because he was attempting to continue a nonconforming use as a dormitory, he would has been in a position to either void the agreement he had made with Bouch, or prepare his defense along lines directed to meeting that issue. Instead, the Borough charged him with operating a rooming house in violation of the ordinance. As the Borough points out in its brief, there is "more than minor significance" in the distinction between these two. For instance, the court in one of its findings stated that between November 21, 1969 and December 31, 1970, the premises were not used as "a fraternity home or dormitory." That factual issue was not before the court, and, therefore, the court's use of this finding to support its conclusion was an error of law.

We have carefully read and reread the short record in this case and must come to the conclusion that the court abused its discretion when it said it did not believe Baird's contentions that four students lived in the premises for part of the period in question. As we noted, there were only three witnesses. The burden was upon the Borough to prove that a nonconforming use had been abandoned. *Urbano v. Zoning Hearing Board,* 6 Pa. Com-

monwealth Ct. 297, 294 A. 2d 403 (1972) ; *Marchese v. Norristown Borough Zoning Board of Adjustment,* 2 Pa. Commonwealth Ct. 84, 277 A. 2d 176 (1971). The Borough's only witness, Fleeger, confirmed at least three times in the record that Baird, together with others, was occupying the premises in July of 1970. Fleeger concluded by virtue of the water usage mentioned above that the property was not being used as a rooming house during the period in question. While Fleeger's testimony is rather convincing regarding rooming house usage, such evidence is circumstantial and cannot stand in light of the direct testimony of Fleeger that he had knowledge of occupancy in July of 1970. The court, therefore, had to completely disregard the testimony of the Borough's own sole witness in reaching its findings. If Fleeger's testimony is removed from the record, the Borough has woefully failed to meet its burden of proving the abandonment.

It is recognized that under our holding in *Marchese, supra,* an intention to abandon may be presumed from a discontinuance of the usage in question. But we also held in *Marchese* that under an ordinance such as is involved in the instant case, the real question is whether or not there was an absence of "actual use" during the one-year period. Here, as we have already noted, the record clearly shows some usage during July of 1970, which is in the middle of the one-year period during which the lower court held the abandonment had occurred. Additionally, in *Marchese,* we noted that:

"[A] temporary cessation, even for a lengthy period, *caused by circumstances over which the property owner had no control,* is generally held not to constitute proof of a discontinuance in the sense of abandonment within the meaning of zoning ordinance provisions since circumstances themselves negate an inference of the necessary intention to abandon the use." (Emphasis in original.) 2 Pa. Commonwealth Ct. at 100, 277 A. 2d at 185.

244

In this case there are two factors which would tend to negate a finding of an intention to abandon. First, the lease with the fraternity only terminated September 30, 1970, and this lease was apparently in litigation, thereby causing the owner (Bouch) to refrain from any negotiations concerning the use of the property until after October 1, 1970, as his letter indicated. Secondly, even the Borough's sole witness, Fleeger, stated for the record that the fraternity left the property in a state of disrepair, necessitating certain repairs and painting, all of which once again was confirmed by Bouch's letter noted above.

We recognize that nonconforming uses are not favorites in the law, *Philadelphia v. Angelone*, 3 Pa. Commonwealth Ct. 119, 280 A. 2d 672 (1971), but we also recognize that property owners have a constitutional right to continue a nonconforming use until the municipality meets its burden of proving that it has been abandoned. *See Marchese, supra*. This is a close case, for we agree that the circumstantial evidence concerning the use of only 3,000 gallons of water for a 10-month period would indicate a very limited use of the premises by anyone for any purpose. Still, the burden was upon the municipality, and our careful review of this record leads us to conclude that the Borough has not met that burden. As a result, we must reverse the order of the court below.