## McCormick v. Butler Township Zoning Hearing Board

*Thomas P. Kennedy,* for appellant.
*Henry A. Giuliani,* for appellee.

TOOLE, *J.*, April 23, 1980—This matter comes before the court on appeal of the Most Reverend J. Carroll McCormick, Bishop of the Diocese of Scranton (hereinafter referred to as appellant), from a decision of the Zoning Hearing Board of Butler Township (hereinafter referred to as board).

On November 30, 1978 appellant filed an application for a building permit to erect a garden crypt or mausoleum for burial purposes in the Calvary Cemetery, Route 309, Drums, Butler Township, Luzerne County, Pa. The cemetery is located in an A-1 District under the provisions of the Zoning Ordinance of Butler Township. The proposed crypt or mausoleum would be erected in the center of the cemetery, and would be approximately 73 feet wide, 173 feet in length, and 24 feet high at its highest point. The structure would provide above ground tombs for approximately 1138 bodies.

The application for the permit was denied by the township zoning officer. That determination was appealed to the board which, by letter dated February 7, 1979, advised the appellant:

"This is to inform you that the *Variance* you applied for to construct a garden crypt mausoleum in Calvary Cemetery on Route 309, Drums, Pa., has been denied.

"The reason for denial of the the *Variance* is that the board feels that the size and location of the mausoleum would detract from the beauty of the cemetery, and would be out of character for the area.

"The vote for denial of *Variance* was unanimous.

"Please be advised that you may appeal this decision to the Court of Common Pleas of Luzerne County within thirty (30) days." (Emphasis supplied.)

On March 7, 1979 appellant filed a notice of appeal in this court to the above term and number.

On April 27, 1979 a transcript of a hearing was filed of record. The transcript is of a hearing held on March 26, 1979, or subsequent to the notice of appeal. On June 8, 1979 the court, upon motion of appellant's counsel, scheduled a hearing on the appeal for June 21, 1979. The hearing was held on the scheduled date and time before the Honorable Peter Paul Olszewski who, on the same date, remanded the matter to the board "to take such additional testimony on all contested questions as shall be necessary and make findings on all relevant issues of fact."

On July 13, 1979 a two page document entitled "Decision," bearing the signature of the chairman of the board, was filed in the above captioned matter. Essentially, the decision once again denied appellant's application.

The matter was thereafter praeciped and placed on the common pleas argument list. Both sides filed briefs and presented oral argument and the matter is now before the court for determination. Before discussing the merits of the appeal, we would note that there are some procedural irregularities involved in this appeal.

First, this court is somewhat at a loss to understand the procedure employed in initiating this action. It would appear that appellant initiated this

action by filing an application for a building permit with the zoning officer. This application was apparently treated as a request for a "variance," and after an apparent appearance and presentation before the board, as evidenced by the board's letter of February 7, 1979, the variance was denied. In its notice of appeal, appellant requests this court to reverse the board and direct the issuance of a "building permit *or* a special exception *or* variance if deemed necessary." After the appeal was filed, the board apparently held another hearing on March 26, 1979. There is apparently no transcript or record of the hearing which resulted in the decision of the board outlined in the letter of February 7, 1979, and from which this present appeal originated. In the present transcript appellant's counsel stated:

". . . The purpose of this hearing is to prepare a transcribed record for an appeal that has already been taken to the Court of Common Pleas of Luzerne County, No. 1993, 1979, appeal was taken from the decision of the Butler Township Zoning Hearing Board, set forth in a letter dated February 7, 1979. . . ."

The procedure employed is, to say the least, confusing. We have at this time an appeal on a record which was made and transcribed subsequent to and not prior to the appeal. This is in specific violation of the provisions of the Pennsylvania Municipalities Planning Code.* We now find ourse-

---

*Act of July 31, 1968, P.L. 805, art. IX, sec. 908, as amended, 53 P.S. § 10908, which pertinently provides: "(7) The board or the hearing officer, as the case may be, shall keep a stenographic record of the proceedings and a transcript of the proceedings and copies of graphic or written material received in evidence shall be made available . . . ."

lves deciding the merits of an appeal by reviewing a transcript taken after the appeal.

To further cloud the proceedings, it is not clear what legal relief was originally requested of the board. Appellant's attorney indicated at the March hearing that appellant was requesting either a variance or a special use permit. He further indicated at that time that he did not care what the board called ppellant's application as long as it granted the relief requested.

In its brief filed in this court, appellant contends that it proceeded on three theories before the board: (1) the proposed crypt or crypt mausoleum represented a natural expansion of a nonconforming use; (2) the application should be treated as a request for a special exception; and (3) no action was required based on the fact that a variance had previously been granted.

For a number of reasons which will be discussed herein, we have concluded that this matter must be again remanded to the board. However, in order to assist the parties and guide the board in its determination, we will discuss some of the legal issues involved and evaluate some of the testimony as it relates to the issues which must ultimately be decided again by the board.

The board acknowledged that the cemetery is presently used and may continue to be used as a cemetery under the protection of the nonconforming use section of the Butler Township Zoning Ordinance. The board disagreed, however, that the proposed mausoleum was a valid extension of a nonconforming use. We agree.

The board concluded that the erection of a mausoleum is not a natural expansion of the existing cemetery which, as noted, is a permissible nonconforming use. Appellant has cited no Pennsylva-

nia authority in support of his position, but has cited several decisions from other jurisdictions holding or indicating that a mausoleum or crypt does not necessarily amount to a change in or extension of a nonconforming cemetery use: Cedar Park Cemetery v. Hayes, 132 N.J. Super. 572, 334 A. 2d 386 (Law Div. 1975); Lewis-Clark Memorial Gardens Inc. v. City of Lewiston, 99 Idaho 680, 587 P. 2d 821 (1978); Oakwood Co. v. Tacoma Mausoleum Association, 22 Wash. 2d 692, 157 P. 2d 595 (1945).

Like the board, we are not persuaded by the cited authorities and reject appellant's argument that a mausoleum represents nothing more than an intensification of rather than a different use from that presently being employed. Nonconforming uses are not favored in the law, and care should be given to see that they are not unduly extended or expanded: Hanna v. Board of Adjustment, 408 Pa. 306, 183 A. 2d 539 (1962). The proposed use and the present use are similar only in that they both provide a means of burial. There are certainly recognizable differences between inground or underground burial sites and aboveground burials in crypts or mausoleums. We are satisfied that the proposed use could obviously change the nature and character of the cemetery and the surrounding neighborhood. We would also note that the drafters of the zoning ordinance involved have apparently noted the difference between an inground cemetery and a mausoleum. See section 605 of the Butler Township Zoning Ordinance.

It also appears to this court that before an applicant can or should seek and urge permission for a natural expansion of a nonconforming use, there should be some evidence to establish a need for

such expansion. In this case, the record establishes not only a use of a different character, but, in addition, also clearly establishes that there is at present, and will be in the future, adequate underground burial space within the present cemetery boundary.

If the proposed crypt is not permissible as a valid extension of a nonconforming use, we must then determine whether the application was properly denied on the other grounds presented. As previously noted, it is not clear whether the instant application was for a variance or a special exception. The original decision of the board indicates that the application was for a variance while the "Decision" subsequently filed discusses the application as one for a special permit. A discussion of the nature of both applications would appear beneficial.

It is well settled that in considering a request for a special exception, the only burden upon an applicant is to establish that the proposed use is a permissible use or recognized exception under the terms of the zoning ordinance. Upon proof of a permissible use, the burden of proof shifts to the objectors to establish, by evidence, that the grant of the exception would be detrimental to the public health, safety and welfare. The applicant is not required, once he establishes a permissible use, to present substantial, serious and compelling reasons in order to obtain the special permit or exception: Zoning Hearing Board v. Konyk, 5 Pa. Commonwealth Ct. 466, 290 A. 2d 715 (1972). If the opponents of an application for a special exception do not meet their burden of proof, then the board is required by law to grant the special exception: Evans v. Zoning Hearing Board of Easttown Township, 40 Pa. Commonwealth Ct. 103, 396 A. 2d 889

(1979); West Whiteland Township v. Exton Materials, Inc., 11 Pa. Commonwealth Ct. 474, 314 A. 2d 43 (1974). We have examined the record presented and find that a mausoleum is a permissible use under the ordinance (section 605) and further our examination reveals no credible evidence to justify or support the conclusion of the board that the erection of this mausoleum would be detrimental to the public health, safety and welfare.

If, on the other hand, this matter is to be treated as a request for a variance, then an additional burden is placed upon the applicant. In variance cases, the burden of proof has been described in numerous ways, but suffice it to say that in all such cases, the applicant is required to prove a hardship which is unique and peculiar to the particular parcel of land, and that the grant of the variance would in no way affect or injure the public interest. See Ryan, Pa. Zoning Law and Practice, Variances, Chapter 6. If this is an application for a variance, then we note that the record is devoid of hardship evidence since there is admittedly sufficient inground burial space as calculated by present burial rates.

The distinction between an application for a special permit and an application for a variance is of critical importance to the public, to the board and to this court. Certainly the public should know before any hearing whether the application is for a variance or a special permit since the nature of the application dictates the burden of proof. A citizen, depending on the nature of the application, may decide to appear or not appear. If the application is for a variance, the citizen may not desire to appear, content to leave the applicant to his burden of proof. However, if the application is for a special permit, and the proposed use is a permissible use within the

ordinance, then the citizen knows that in order to avoid the grant of the permit that he and/or others similarly inclined must appear to carry and meet the burden of presenting evidence to establish that the grant of such permit would, under the circumstances, be injurious to the public health, safety and welfare.

We cannot determine on the basis of the instant record what the public was told concerning the nature of the application filed in this matter. The record does reveal that at least one citizen thought the proceedings were being held pursuant to an application for a variance. That one objector pertinently stated:

"I believe this was advertised as a re-hearing on [appellant's] application for a variance. So I don't see how you can say to the Board in general, we ask for any type relief you are willing to give us. As well as to a variance itself, I don't think they can show any hardship. They cannot show exactly at what rate the land is being consumed, and how soon something like this would be necessary. And, they currently are being allowed reasonable use of their land, and that's what they are entitled to under the law. A variance is only granted to provide relief from a hardship. And there are very specific conditions in the Pennsylvania Municipalities Planning Code. They don't fulfill them. . . ."

To make matters even worse, when this matter was remanded by Judge Peter Paul Olszewski, he ordered the board to take such additional testimony as was necessary, and to make findings on all relevant issues of fact. That order was not complied with in that no hearing was ever held and, in addition, the board did not make findings in accordance

with law. Indeed, the "Decision" filed by the board does not indicate the factual basis for the stated conclusions.

Under all the circumstances, we feel it only fair and just that this matter be again remanded to the board. The board should determine at the outset whether the instant application is for a variance or for a special permit, or some other specific relief under the zoning ordinance. After appropriate notice, a hearing should then be held affording appellant and any citizen the opportunity to present testimony in support of or in opposition to the application. The board should then make a decision in which it clearly states its findings of facts from the record and its conclusions of law. Without such particularity, this court cannot determine the propriety or legality of any judgment made by the board.

We would also note that zoning appeals in this county are not ordinarily presented for disposition through argument court. Appeals from zoning matters are to be scheduled and held before the miscellaneous judge. At the scheduled hearing, the miscellaneous judge will determine if additional testimony is required. If additional testimony is directed, then the miscellaneous judge decides the case on the merits making his own findings of fact and conclusions of law: Horninger v. Bethlehem Township Police Association, 8 Pa. Commonwealth Ct. 85, 301 A. 2d 433 (1973); Baird v. Slippery Rock Borough Zoning Board, 20 Pa. Commonwealth Ct. 236, 340 A. 2d 904 (1975). If no additional testimony is required or directed, then the court reviews the record to determine whether the board abused its discretion or committed an error of law: Harper v. Ridley Township Zoning

Hearing Board, 21 Pa. Commonwealth Ct. 93, 343 A. 2d 381 (1975); Klavon v. Marlborough Township Zoning Hearing Board, 20 Pa. Commonwealth Ct. 22, 340 A. 2d 631 (1975). We have decided this matter at this time rather than remand the same to the miscellaneous court in order to avoid any further delay and in hopes that by this review, we will facilitate the ultimate disposition of this entire matter.

Accordingly, we enter the following

## ORDER

It is ordered, adjudged and decreed that this matter be and is remanded to the Zoning Hearing Board of Butler Township with directions to proceed in accordance with this opinion.