(No. 25694.—

THE CHICAGO COSMETIC COMPANY *et al. vs.* THE CITY OF CHICAGO *et al.* Appellees.—(THE FRANCO-AMERICAN HYGIENIC COMPANY, Appellant.)

*Opinion filed October 11, 1940.*

JOHN S. HALL, for appellant.

BARNET HODES, Corporation Counsel, (MARTIN H. FOSS, and ALPHONSE CERZA, of counsel,) for appellees.

Mr. JUSTICE FARTHING delivered the opinion of the court:

This suit was brought to restrain the defendants from enforcing the chemical or paint factories ordinance of the city of Chicago, the sections of. which, as amended, are as follows:

"Article II.
"Chemical or Paint Factories.

"3828. CHEMICAL OR PAINT FACTORY DEFINED.) The term 'chemical or paint factory' as used in this article shall be construed to mean any factory, building, place or establishment where soda, soda ash, salt, sal soda bicarbonate of soda, caustic soda, alcohol ether, essential oils, carbonic acid gas, chlorine, aniline, benzine, perfumes, toilet preparations, coal-tar chemicals, inks, dyes, bluing, washing powders, lye, boiler compounds, disinfectants, fertilizers, insect powders, condition powders, furniture polish, shoe polish, metal polish, cleaning compounds, fireworks, gun powder, dynamite and other explosives, photographic chemicals, glycerine, drugs, medicines, ointments, proprietary or patent medicines, paints, pigments, linseed oil, turpentine, drying oils, paint removers, shellac, varnish, enamels, calcimine, wall paper cleaners, putty, or any other chemicals, paints, oils, medicines, drugs, or similar materials or preparations, are made, manufactured, mixed, compounded, purified or prepared; provided, however, that this shall not apply to wholesale drug houses or other establishments specifically defined and licensed by other parts of this ordinance or other ordinances of the city of Chicago.

"3829. LICENSE REQUIRED.) No person, firm or corporation shall manage, conduct, operate or carry on a chemical or paint factory without first having obtained a license therefor.

"3830. APPLICATION FOR LICENSE—SPECIAL REQUIREMENTS.) Any person desiring to conduct, operate, carry on or manage a chemical or paint factory shall make application for a license therefor, in writing, which shall conform to the general require-

ments of this ordinance relating to applications for licenses. When application for such license for a chemical or paint factory is made, the commissioner of health shall cause an investigation to be made of the premises named and described in such application, for the purpose of determining the fitness and suitability of such premises for the conduct and operation of the industry there to be conducted, from a sanitary standpoint, and to ascertain whether the applicant has complied with the State laws and city ordinances regulating health, safety and sanitation so as to properly safeguard the lives and health of employes engaged therein.

"3831. GRADED LICENSE FEE.) The annual license fee for each chemical or paint factory shall be as follows:

Not more than 2 persons engaged........................$ 10.00
  3 to   5 persons engaged...............................  25.00
  6 to 10 persons engaged...............................  50.00
 11 to 20 persons engaged............................... 100.00
 21 to 30 persons engaged............................... 150.00
 31 to 40 persons engaged............................... 200.00
 41 to 50 persons engaged............................... 300.00
 51 to 100 persons engaged............................... 400.00
Over 100 persons engaged............................... 500.00

"3832. LICENSE PERIOD.) All licenses issued under the provisions of this article shall expire on the thirtieth day of April following the date of issuance.

"3833. SANITARY REQUIREMENTS.) Every chemical or paint factory shall be kept in a clean and sanitary condition. All measures which in the opinion of the commissioner of health are necessary, in addition to such as are specifically prescribed in part X of this ordinance or in any other of the fire prevention ordinances of the city, shall be taken to properly safeguard the lives and health of all persons employed in such establishments. All necessary appliances and devices shall be installed to prevent the emission of obnoxious fumes, odors or dust, and provision shall be made to prevent the occlusion or obstruction of the drains or sewers through which the sewage or wastes of such establishment are discharged. Adequate and convenient washing and toilet facilities shall be provided for employes in such establishments.

"3834. PENALTY.) Any person, firm or corporation violating any of the provisions of this article shall be fined not less than ten dollars nor more than one hundred dollars for each offense; and every day that any violation of this article shall occur shall constitute a separate and distinct offense."

The cause was referred to a master in chancery who found in favor of the defendants. The chancellor overruled

exceptions to the master's report and dismissed the complaint for want of equity on November 28, 1939. Notice of appeal was filed February 13, 1940. On April 3, 1940, the requisite certificate for direct appeal to this court was obtained from the trial judge.

Defendants contend that the appeal was not properly perfected because the certificate was not obtained before the notice of appeal was filed. The certificate is part of the record, and was obtained within the time allowed for making up the record. This contention cannot be sustained, nor can we sustain the contention that this appeal should be dismissed because the remaining plaintiffs were not served with copies of the notice of appeal. Rule No. 34 of this court (370 Ill. 35) provides, in part: "A copy of the notice by which the appeal is perfected shall be served upon each party whether appellee or co-party who would be adversely affected by any reversal or modification of the order, judgment or decree, and upon any other person or officer entitled by law to a notice of appeal, within ten days after said notice of appeal is filed in the lower court." In the case before us the remaining plaintiffs would not be adversely affected if the decree should be reversed. It was not necessary, under such circumstances, to serve them with copies of the notice of appeal. We have jurisdiction of this appeal because the validity of a municipal ordinance is involved and the requisite certificate of the trial judge has been made.

Donald M. Clark testified, as did other witnesses for the plaintiffs, that alcohol is used in the manufacture of perfumes and cosmetics. He said that on the average about ninety per cent of perfume is alcohol. On cross-examination he admitted that alcohol is highly combustible, inflammable and explosive and that paraffin was explosive and combustible. He said that manufacturers of cosmetics used glycerine, and that it was inflammable. Plaintiffs' witness Bafetti, admitted that alcohol is as combustible and inflam-

mable as kerosene, and that it was used in cosmetics, and that his company used a petroleum product. This witness was of the opinion that glycerine and paraffin are not inflammable although they would burn, because, he said, these things would not burn "in their ordinary course." Plaintiffs' testimony showed that essential oils were used in manufacturing perfumes and cosmetics.

Defendants' witness William Milota, a license investigator for the city, testified he visited the Chicago Cosmetic Company's premises on June 18, 1937, and saw two 50-gallon drums of alcohol there. He also said that company was manufacturing cosmetics.

George Redmond, another license investigator for the city, visited the premises of the Solo Laboratories, Inc., one of the plaintiffs, in April, 1937, and at a different location later. On the first visit he saw employees making and bottling shoe polish and on the second visit, he saw four 50-gallon drums of alcohol as well as ten 5-gallon glass bottles which contained alcoholic mixtures.

Thomas Finley, an inspector of the Chicago fire prevention bureau, testified he visited the premises of the Chicago Cosmetic Company on March 28, 1938. He found violations of the fire ordinance and returned several times to see that the company had complied with the orders given it by the fire prevention bureau. One of the things ordered done was to place the tanks which contained more than ten gallons of inflammable liquids under ground. This order had not been obeyed at the time this company moved out of this witness' inspection district. On his first visit he found the following: "Six 50-gallon drums of alcohol, a drum of glycerine, a drum of paraffin oil and two drums of hair oil, all of which he characterized as inflammable. He also said that this company was handling materials in a manner forbidden by the fire ordinance,—that is, in an open, ordinary can, carried from one side of the building to the other.

Matthew J. Martinek, the principal chemist of the Chicago board of health, testified he is an author on chemical subjects, and that he was in charge of the city's chemical laboratory where analyses are made of all substances which have a bearing on the public health and safety. He also testified that this laboratory does work for the fire prevention bureau and that he had studied and was familiar with the manufacturing processes of the cosmetic industry. He testified, further, that his department was interested in all types of household articles whether they are cosmetics or toilet preparations, and that some of them contain inflammable substances which create fire hazards. He gave the boiling and flash points of many of the substances used in the manufacture of cosmetics. Ether was first, with a flash point of minus 40 degrees Fahrenheit and a boiling point of 35 degrees Centigrade; acetone was second, with a flash point of 2 degrees Fahrenheit and a boiling point of 57 degrees Centigrade, and alcohol was next in the order of inflammability, with a flash point of 48 degrees Fahrenheit and a boiling point of 78.6 degrees Centigrade. Without objection he testified that these three substances must bear a red label marked "Flammable, Dangerous" if shipped in inter-State commerce. It is not necessary to repeat the entire testimony of this witness. From time to time the tests of cosmetics made at the laboratory over which he presided disclosed the presence of toxic substances. He also said that certain substances used by cosmetic manufacturers increased the danger from fire because they liberated oxygen in burning. He listed potassium chlorate, potassium permanganate and sodium peroxide.

The appellant contends that the city had no express or implied power to pass the ordinance here involved; that the validity of it cannot be sustained on the theory that it was enacted under the police power granted cities and villages; that the ordinance does not apply to the manufacture of cosmetics or toilet preparations; that the State may withdraw

the delegated police power conferred upon cities, and, as sovereign, exercise it, itself, or confer that power on other agencies; that the ordinance is broader than its title; that it is arbitrary, discriminatory and unreasonable, and it violates the due process clauses of the State and Federal constitutions. Appellant also claims that the ordinance is one for revenue only, and, therefore, it is void.

Cities possess only such powers as the legislature has expressly conferred upon them, or such as are necessarily incident to powers expressly granted. (*Klever Karpet Kleaners* v. *City of Chicago*, 323 Ill. 368, 374.) In the case just cited, this court said: "If the regulation of certain conditions affecting the public safety has been delegated to a city and the efficient regulation of such conditions requires the conduct of a business peculiarly affected by them to be controlled by the limitations of a licensing ordinance, the power of the city to adopt such an ordinance will be necessarily implied." Also, at page 375: "A court will not hold an ordinance void as unreasonable where there is room for a fair difference of opinion on the question, even though the correctness of the legislative judgment may be doubtful and the court may regard the ordinance as not the best which might be adopted for the purpose."

The holding in the case just cited was that cities have the implied power to regulate the business of dry cleaning. We have held that cities also have the implied power to regulate and license gasoline filling stations, (*Fligelman* v. *City of Chicago*, 348 Ill. 294;) to regulate and license tank wagons, (*Spiegler* v. *City of Chicago*, 216 Ill. 114,) and laundries, *Moy* v. *City of Chicago*, 309 Ill. 242.

Whatever powers the city of Chicago had to pass this ordinance are contained in the express grants or the powers that can reasonably be implied from and that are necessarily incident to those express powers found in the Cities and Villages act. (Ill. Rev. Stat. 1939, chap. 24, article V.) In that article paragraph 65.3 empowers cities to fix the

amount, terms and manner of issuing and revoking licenses; paragraph 65.62 gives cities power to regulate and prevent the carrying on of manufactories dangerous because they cause or promote fires; paragraph 65.64 permits cities to regulate and prevent the storage of gunpowder, tar, pitch, resin, coal oil, benzine, turpentine, hemp, cotton, nitro-glycerine, petroleum, or any of the products thereof, and other combustible or explosive material; paragraph 65.65 gives cities the power to pass all necessary police ordinances, and paragraph 65.77 empowers cities to do all acts and make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease.

This record shows that in the manufacture of cosmetics substances are used which are not only inflammable but that some are explosive and many increase fire hazards. While it was not shown, and was not necessary to be, that plaintiffs used toxic materials in the cosmetics they manufactured, such use in cosmetics was shown to exist by tests made in the city laboratory. The appellant insists that the head of the testing laboratory should not have been allowed to testify to this fact, but the ordinance was not directed at appellant or the other plaintiffs, alone. It was designed to protect the health and safety of the public, and this testimony was not only competent but it was material and relevant as well. This witness testified fully as to his qualifications and experience, and it was proper for him to state the result of the analyses made at the laboratory, by him, or under his supervision. (*People* v. *Cox,* 340 Ill. 111.) Where the police power exists, the legislative body is the judge of the necessity or expediency of regulation. Things that are injurious and things which may or may not be, according to the way in which they are manufactured, managed or conducted, may be the subject of regulation and license. *City of Chicago* v. *Arbuckle Bros.* 344 Ill. 597.

The facts before us demonstrate that the city had the implied power to regulate and license the manufacture of

cosmetics. The use of petroleum products, alcohol and other inflammable or explosive substances in such business enterprises is one basis, and the prevention of the use of toxic substances in order to preserve the health of the public, forms another basis for this ordinance.

Appellant says the ordinance does not apply to its business, but the proof shows that substances specifically named in the ordinance such as alcohol, essential oils and glycerine, are all used in its cosmetics. It also contends that the title does not include the factories which manufacture cosmetics. This court held in *City of Metropolis* v. *Gibbons,* 334 Ill. 431, 434, that there is no legal requirement that ordinances have a title, and that section 13 of article 4 of the Illinois constitution refers only to acts of the General Assembly.

Appellant next contends that the State may withdraw delegated powers and that by the enactment of the Illinois Factory Inspection act, and by paragraphs 349 and 350 of the Criminal Code, (Ill. Rev. Stat. 1939, chap. 38, pars. 349, 350,) which deal with the labeling of gasoline or benzol receptacles used in the retail trade, and also by the Federal Pure Food, Drug, and Cosmetic act of 1938, the police power of cities to regulate the manufacture of cosmetics, has been withdrawn. None of these acts withdraw such power. While city ordinances must give way whenever they conflict with acts of the legislature, the mere fact that the State has legislated upon the particular subject does not necessarily deprive a city of its power to deal with the subject by ordinance. *City of Chicago* v. *Union Ice Cream Manf. Co.* 252 Ill. 311.

Although the appellant contends that the ordinance is void because it says it was passed for revenue only, as was the case in *Bauer* v. *City of Chicago,* 321 Ill. 259, appellant fails to make any proof whatever of a lack of relationship between the amounts of the graduated license fees and the cost of inspection and regulation. In *City of Chicago* v. *Ben Alpert, Inc.* 368 Ill. 282, 287, this court said: "In

the absence of a showing that the fees collected exceed the reasonable expense of regulation, or that they are imposed solely for the purpose of raising revenue, the amount of a license fee is a matter for the city council to determine in the exercise of a sound legislative discretion." The fact that a license fee may exceed the probable expense of issuing the license and inspecting the business, will not, standing alone, establish the claim that the ordinance is one adopted for revenue alone, and invalidate it. *City of Chicago* v. *Arbuckle Bros. supra; Kinsley* v. *City of Chicago,* 124 Ill. 359.

Under the contention that the ordinance is arbitrary and discriminatory appellant says other manufacturing businesses handle as much of the inflammable and explosive materials as it uses in its business. To be valid, ordinances need not attempt to cure all evils sought to be prevented. It is enough if the ordinance operates alike on all those included within its terms. It is no sufficient reason to argue, as appellant does, that this ordinance might be construed to include drug stores which also handle cosmetics and some of their ingredients. It does not run a drug store and is not affected in that particular way even if its statement were conceded to be true.

Appellant does not show in its argument wherein the ordinance is unconstitutional. The mere statement that the ordinance is in contravention of the constitution or some particular article and section thereof, does not raise the question of constitutionality so as to make it our duty to investigate to see whether or not that is the case. *Standard Oil Co.* v. *City of Danville,* 199 Ill. 50.

The chancellor was correct in overruling the exceptions to the master's report and in dismissing the complaint for want of equity. The decree of the circuit court of Cook county is, therefore, affirmed.           *Decree affirmed.*