NELL STROUPE, PRESIDENT AND FRANCES K. McLAREN, SECRETARY, OF THE ASHEVILLE AND BUNCOMBE COUNTY BRANCH OF THE PURE WATER ASSOCIATION v. EARL ELLER, FRANK MULVANEY, CLARENCE MORGAN, THEODORE B. SUMNER, WILLIAM ALGARY, WALTER McRARY, AND RALPH MORRIS, INDIVIDUALLY AND AS MEMBERS OF THE ASHEVILLE CITY COUNCIL; AND J. WELDON WEIR, INDIVIDUALLY AND AS CITY MANAGER OF ASHEVILLE, NORTH CAROLINA; AND THE CITY OF ASHEVILLE, NORTH CAROLINA, A MUNICIPAL CORPORATION.

(Filed 14 October, 1964.)

**1. Municipal Corporations § 24;   Injunctions § 5—**

A municipal ordinance for the fluoridation of the city water supply is enacted in the exercise of public policy and the courts will not interfere therewith in the absence of a showing that the ordinance is so unreasonable, oppressive and subversive as to amount to an abuse rather than a legitimate exercise of the legislative power.

**2. Same—**

A court, in the exercise of its equity jurisdiction, may refuse to dismiss an action to restrain a municipality from enforcing its ordinance for the fluoridation of the city water supply, even though no ground for injunctive relief is established, until its voters have an opportunity to petition for a referendum to recall the ordinance, it appearing that the changeover to fluoridation would involve expense, that the city charter provides that a recall petition might be filed after the passage of an ordinance and before it goes into effect, and that on an occasion some seven years prior the voters had disapproved fluoridation.

**3. Municipal Corporations § 24—**

> Only residents of a municipality may vote in a referendum to recall a fluoridation ordinance, notwithstanding the city also sells drinking water to persons living outside its boundaries.

APPEAL by defendants from *Froneberger, J.,* March, 1964 Civil Term, BUNCOMBE Superior Court.

The plaintiffs instituted this civil action on November 22, 1963, for temporary and permanent orders restraining the defendants from enforcing an ordinance passed by the Asheville City Council directing the city manager to place fluorides in the water supply of the corporate defendant. The verified complaint upon which the plaintiffs base their demand for the orders alleges as the reasons therefor both the excessive costs and the harmful effects of fluoridation.

The defendants filed a demurrer upon the ground the complaint fails to state a cause of action. The parties stipulated that in February, 1956, the Buncombe County Board of Health passed a resolution requesting the City Council to institute such orders as "may be required to fluoridate our public water supply" and in order for the Council to have the benefit of an advisory vote, the Board of Commissioners of the County was requested to and did call a county-wide election on the question whether the City should introduce fluorides into the public drinking water supply. The vote was 2,479 for and 8,465 against fluoridation. "No further action was taken by the council and the public water supply was not fluoridated."

The parties stipulated:

> "7. That the question of the feasibility of placing fluorides in a public water supply is highly controversial, many communities having allowed it, many communities having disallowed it, and many communities having taken same out of their water supply after having installed it, and representatives of the proponents and opponents having appeared formally before the City Council at various times over the last several years, both before and after the vote of 1956.
>
> "8. That the sole purpose of fluoridation of the city water supply is to reduce the dental caries (dental decay) in teeth of individuals from birth to the age of approximately fifteen years, together with any residual benefit to those persons throughout their life by consumption of fluoridated water. Dental caries, or tooth decay, is a prevalent and common disease or condition of residents generally in Asheville and Buncombe County.

"9.  It is contemplated that the fluoridation measures undertaken by the Asheville City Council, if carried out, would be under the control and governed by the procedure determined by the North Carolina State Board of Health as in such matters provided."

In August, 1963, the County Health Officer, the Buncombe County Dental and Medical Associations recommended the immediate fluoridation of the city's water supply. The Council, on September 12, 1963, by a 4 to 3 vote, adopted a resolution directing the city manager to fluoridate the water supply. The plaintiffs instituted this action and obtained a temporary order from Judge McLean restraining the defendants pending a hearing. At the hearing on March 4, 1964, Judge Froneberger overruled the demurrer and continued the restraining order to the final hearing. The defendants appealed.

*Horton & Horton, by Shelby E. Horton, Jr., for plaintiff appellees.*
*O. E. Starnes, Jr., for defendant appellants.*

HIGGINS, J.  According to the stipulations of the parties and the findings of the court, the advantages and disadvantages of fluoridating the city water supply are controversial. The question, therefore, becomes one of policy for the decision of the City Council rather than one of law for the courts. *DeAryan v. Butler*, 260 P. 2d 98 (Cal.) ; *West Coast Hotel Co. v. Parrish*, 300 U.S. 379, 57 S. Ct. 578, 81 L. Ed. 703; G.S. 160-229 and 255; *State ex rel Whittington v. Strahm*, 374 S.W. 2d 127 (Mo.). "It is only where the ordinance is so unreasonable, oppressive and subversive of individual and property rights that it carries the inference of an attempted abuse rather than a legitimate exercise of power that the courts will interfere." 6 McQuillan, Municipal Corporations, § 20.04, p. 9 (3rd Ed. 1949).

The plaintiffs contend the adverse vote in the county-wide election of 1956, although advisory, nevertheless should prevent the council from passing the resolution until the electors are given another opportunity to vote on the question. While the city charter was not introduced in evidence, yet the parties in their briefs and in the oral argument concede that it provides for a referendum election upon proper petition before any ordinance becomes effective; and in the event a majority vote for the repeal, the ordinance shall be recalled.

The broad allegations in the complaint are narrowed by the stipulations of the parties. In the absence of any charge of bad faith on the part of the city council or on the part of the health officer and the dental and medical associations at whose instance the council ordered flu-

oridation, we hold the complaint fails to allege a cause of action. At the same time we realize that difficulty and expense are involved in the changeover to fluoridation, and that upon petition for a referendum the resolution to fluoridate may be recalled. This being an equity proceeding, we remand the cause to the Superior Court of Buncombe County to be dismissed — but only after the opponents have had time to call for and obtain a referendum as provided in the City Charter.

The recall election must be determined by the voters of the city. Those outside, notwithstanding their dependence on the city for their water supply, may not participate in any election to recall an ordinance of the City Council. After the opponents of fluoridation have had a reasonable time to petition for a referendum the Superior Court will dismiss this cause at the cost of the plaintiffs. This delay seems proper inasmuch as the Charter provides the petition may be filed *"after* the passage of any ordinance . . , and *before* it goes into effect." (Emphasis added.)

Reversed and remanded with instructions to dismiss within a reasonable time after the mandate of this Court.