393 A.2d 381

**COMMONWEALTH of Pennsylvania, DEPT. OF ENVIRONMENTAL RESOURCES and Carroll E. Ditzler et al., Appellants,**

**v.**

**CITY OF LEBANON (two cases).**

Supreme Court of Pennsylvania.

Argued Nov. 18, 1977.

Decided Oct. 5, 1978.

Egli, Reilly, Wolfson & Feeman, James T. Reilly, Lebanon, for appellants at No. 403.

Michael S. Alushin, Asst. Atty. Gen., Harrisburg, for appellant at No. 409.

Samuel G. Weiss, Jr., Lebanon, for appellee, City of Lebanon.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

## ·OPINION

POMEROY, Justice.

The City of Lebanon, Pennsylvania, which began to fluoridate its water supply in 1972, sought permission of the Department of Environmental Resources (DER), to cease such fluoridation; the request was denied. By this appeal we are asked to determine whether the DER has the legal authority to compel the City of Lebanon to continue with the fluoride treatment of its water supply and, if such authority exists, whether in this case the DER exercised that authority without abusing its discretion. We conclude that sufficient authority is vested in the DER by statute to prescribe continued fluoridation and that the agency's deci-

sion with regard to Lebanon's proposed permit modification was a reasonable and justifiable exercise of the department's statutory authority.

The City of Lebanon was issued a water supply permit in 1970[1] which authorized construction and operation of a water treatment plant for the city to replace the one then in service. The permit specified that the water to be distributed from the new plant would be fluoridated.[2] By November, 1972 fluoridation was in practice at the new plant. On January 8, 1973 the City Council of Lebanon passed a resolution requesting the DER to approve a revision of Lebanon's water permit so as to eliminate fluoride as a component of the water to be furnished to citizens of Lebanon, to the end that fluoridation could be discontinued. When DER denied the request, one Daemon C. Strickler and certain other citizens of the City appealed to the Environmental Hearing Board,[3] and the City of Lebanon inter-

1. The permit was issued by the Department of Health under the terms of the Water Supply Law, Act of April 22, 1905, P.L. 260, § 1, 35 P.S. 711 (1977). In 1971 many of the powers of the Department of Health were transferred to the new Department of Environmental Resources created by amendment to The Administrative Code of 1929. Act of April 9, 1929, P.L. 177, art. XIX–A, § 1901–A, added December 3, 1970, P.L. 834, No. 275, § 20, 71 P.S. § 510–1 (Supp. 1978). Specifically the DER was vested with the power and duty to administer the Water Supply Law, *supra*, and to issue waterworks permits. 71 P.S. § 510–1(6–7).

2. Fluoride is an ion of the element fluorine which is not naturally found in an isolated form, but rather in association with other elements, most commonly calcium. Fluoridation is accomplished by the addition of a fluoride compound to the water supply so as to achieve a concentration of the fluoride ion of approximately one part per million. The purpose of fluoridation is to protect the teeth of those who drink fluoridated water from developing dental caries.

3. The Environmental Hearing Board, authorized by the same act which created the DER, is vested with, *inter alia*, the following functions:

"(a) The Environmental Hearing Board shall have the power and its duties shall be to hold hearings and issue adjudications under the provisions of the act of June 4, 1945 (P.L. 1388), known as the 'Administrative Agency Law,' on any order, permit, license or decision of the Department of Environmental Resources.

vened.[4] The Board, one member dissenting, sustained the action of the DER in refusing to alter the permit so as to allow discontinuance of fluoridation.

Lebanon appealed this decision to Commonwealth Court and Carroll E. Ditzler and interested proponents of fluoridation, *see* note 4 *supra,* were allowed to intervene, thus bringing together all of the interested parties. The Commonwealth Court reversed the order of the Environmental Hearing Board and directed the DER to allow Lebanon to discontinue fluoridation of its water supply. 22 Pa.Cmwlth.

> "(b) The Environmental Hearing Board shall continue to exercise any power to hold hearings and issue adjudications heretofore vested in the several persons, departments, boards and commissions set forth in section 1901–A of this act [e. g., the Department of Health in this instance].
>
> "(c) Anything in any law to the contrary notwithstanding, any action of the Department of Environmental Resources may be taken initially without regard to the Administrative Agency Law, but no such action of the department adversely affecting any person shall be final as to such person until such person has had the opportunity to appeal such action to the Environmental Hearing Board; provided, however, that any such action shall be final as to any person who has not perfected his appeal in the manner hereinafter specified." Adm.Code § 1921–A, 71 P.S. § 510–21.

4. Notwithstanding the pendency of the above proceeding, the Lebanon City Council on February 24, 1974, resolved unilaterally to discontinue fluoridation of the City's water supply. This action prompted the filing of a bill in equity in the Court of Common Pleas of Lebanon County by one Carroll E. Ditzler and others seeking to enjoin the proposed discontinuance. *Ditzler v. City of Lebanon,* Court of Common Pleas of Lebanon County, No. 7, Equity, 1974. The DER intervened in this action and the parties entered into a stipulation according to which the City agreed to petition for intervention in the appeal pending before the Environmental Hearing Board (which petition was granted) and agreed that it would not terminate fluoridation of its water supply until final disposition of the legal questions involved. The common pleas action was thereafter discontinued.

At a later stage of this controversy there occurred a breakdown in the City's water treatment plant, including the fluoridation process, which went unrepaired. The court of common pleas decreed specific performance of the stipulation referred to above so that fluoridation would be continued pending this litigation. This decree was affirmed by the Commonwealth Court. *Ditzler v. City of Lebanon,* 29 Pa. Cmwlth. 69, 370 A.2d 441 (1977).

132, 348 A.2d 166 (1975).[5] We granted allocatur,[6] and will reverse.

In creating the DER,[7] the legislature in the Administrative Code charged that agency with, among other things, the duty of administering the Water Supply Law, *supra* note 1. The purpose of that law is indicated by its title: "An act to preserve the purity of the waters of the State, for the protection of the public health." The Water Supply Law also empowers the DER to use its judgment as to whether "the proposed source of supply appears to be not prejudicial to the public health." 35 P.S. § 713. The Administrative Code also contains provisions concerning water supply, including the requirement that no waterworks may be constructed or extended without written approval of the DER. Waterworks permits issued by the DER are to "stipulate therein the conditions under which water may be supplied to the public." Adm.Code § 1918–A(1), 71 P.S. § 510–18(1).

In the discharge of its functions under the Water Supply Law and the Administrative Code, the DER has issued rules and regulations. 25 Pa.Code § 109.1 *et seq.* The term "water supply" is defined to include "any and all water treatment, storage, transmission and distribution facilities." 25 Pa.Code § 109.1. The stated purpose of the waterworks regulations is "to protect the public health through the proper design, operation and maintenance of water supplies." 25 Pa.Code § 109.2. Written approval by the DER is required before a water supplier may make any change from previously approved specifications affecting the treatment process, including the addition, alteration or discontinuance of any protective measure. 25 Pa.Code § 109.22(a–b).

5. The decision was by a divided court. Judge Wilkinson filed a dissenting opinion, joined by Judges Rogers and Blatt.

6. Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. II, § 204(a), 17 P.S. § 211.204(a) (Supp.1978), since superseded by Section 724(a) of the Judicial Code, 42 Pa.C.S. § 724(a) (effective June 28, 1978).

7. Adm.Code §§ 1901–A(7), 1918–A(1), 71 P.S. §§ 510–1(7), 510–18(1).

Where fluoridation is in use, the standard for the concentration of fluoride in the water is established in accordance with federal drinking water standards (at 1.0 mg/1). The City makes no direct challenge to the validity of these regulations,[8] including the provision that any change in the treatment process of water by a permit holder must have DER approval. Such a challenge is, however, implicit in the City's contention that DER is without authority to disapprove its contemplated discontinuance of the fluoride treatment.

An appellate court's scope of review of an administrative agency's order of the kind here challenged is narrow. See, e. g., *Ramey Borough v. Pennsylvania Department of Environmental Resources*, 466 Pa. 45, 49, 351 A.2d 613 (1976); *Crawford v. Pennsylvania Department of Health,* 19 Pa.Cmwlth. 10, 15–17, 338 A.2d 727 (1975). In the hearings before the Environmental Hearing Board the City sought to establish that fluoride in water might have a deleterious effect on the potability of the water or the health of the consumer. The DER and the advocates of fluoridation, on the other hand, produced evidence that fluoride treatment has been successfully practiced in this country for decades, significantly reducing the incidence of dental caries among the populace, and without producing any ill effects. From our examination of the record we are satisfied that the evidence amply supports the conclusion of the DER and the Environmental Hearing Board that the fluoridation of domestic water supplies is an important means of preventing tooth decay, especially in children, and thereby of protecting the public health. Clearly, the DER had power, "for the protection of the public health," to promulgate its regulation prohibiting the alteration of the chemical composition of water without its approval. The evidence warranted the

8. Courts are required to take judicial notice of the contents of the Pennsylvania Code, where the regulations referred to are published. 45 Pa.C.S. § 506 (Special Pamphlet 1978).

Board's conclusion that actions concerning the elimination of fluoridation fall within the scope of this regulation.[9]

█ The remaining question is whether the DER's determination that the fluoridation of water in the City of Lebanon should be continued was an abuse of its administrative discretion. The Commonwealth Court suggested that in order to require continuation of fluoridation by any water supply permit holders, such as Lebanon, the DER must require that all permit holders fluoridate their water supplies, including municipalities which have never initiated such treatment. Assuming that the DER could, in the proper exercise of its authority, require all permit applicants to undertake fluoridation as a condition of obtaining a water supply permit (a question not presented by this record and

9. We note in this regard that the courts of our sister states have unanimously upheld fluoridation in the interest of public health as a proper exercise of the states' police power. A recent observation of the Supreme Court of New Jersey adds perspective to the instant dispute:

"Although no harmful results from fluoridation have been clearly proven and it has no effect upon the color, taste or odor of water and despite the health benefits that are clearly derived, proposals to fluoridate drinking water have encountered extraordinary opposition and antagonism. The generative forces of this hostility are not easily identified but have found expression in a variety of arguments. It is contended, variously, that there is a lack of statutory authority for the municipal action; that even if adequate statutory authority can be inferred, fluoridation is an abusive exercise of police power and as such is constitutionally offensive; that it prohibits the free exercise of religion by imposing medication upon those who would resist it; and that it otherwise constitutes a deprivation of personal liberties. The courts throughout the nation have been virtually unanimous in resisting these as well as other arguments, and in upholding fluoridation of drinking water as a valid public health measure whenever a challenge has been presented. . . . The unanimity of appellate state court holdings is matched only by the frequency and persistent regularity with which the United States Supreme Court has declined review." [Citations omitted.] *Young v. Board of Health of Somerville*, 61 N.J. 76, 78, 293 A.2d 164, 165 (1972).

The decisions from other states cited in the New Jersey opinion quoted above are included among the cases from twenty different states upholding fluoridation collected in the appendix to this opinion.

which we need not now consider),[10] the fact that it has not enforced such a requirement does not render defective the agency's refusal to sanction abandonment of this beneficial health measure by a permit holder whose water supply system is already capable of fluoridation.[11]  Since elimination of the fluoride component in water already containing it would arguably be prejudicial to public health, the refusal to approve such an action seems clearly to be within the DER's statutorily vested discretion, relative to protection of public health, and neither arbitrary nor capricious, as appellee contends.  In sum, we conclude that the DER's fluoridation policy is a reasonable exercise of its statutory authority over water supply permits, and that the agency acted properly in refusing to allow the City of Lebanon to alter the formula of its water so as to cease fluoridating the municipal water supply.

**10.**  Nor do we consider any argument, none having been presented, that the DER's regulations or its action thereunder in this case violate the Equal Protection or Due Process clauses of the federal or state constitutions.

**11.**  The pragmatic reasoning of the dissenters below is, we think, a valid justification of the DER's approach to this matter:

"DER's policy of refusing to require fluoridation to obtain a permit and the refusal to modify a permit previously issued to allow discontinuance of fluoridation after it is established is not inconsistent.  Indeed, it is sound on the basis of burden of proof alone.

"In the first instance, when fluoridation is not required to obtain a permit, the applicant is resisting fluoridation and the burden would be on DER to establish that to approve an unfluoridated water supply would be prejudicial to the public health.  In the second instance, where the existing permit requires fluoridation, the applicant is seeking to change the permit and, therefore, has the burden of convincing DER that it is not prejudicial to the public health to remove the requirement.

"In addition,  .   .   .  expense is always a proper consideration in setting requirements for what is or is not detrimental to the public health as those words are used in legislation.  Certainly it is a proper consideration when one is exercising discretion.  Under such circumstances, there is a vast distinction between insisting on a very substantial expense to obtain a permit and permitting its removal after it and the permit have been in existence."  22 Pa.Cmwlth. at 137–38, 348 A.2d at 168–69.

The order of the Commonwealth Court is reversed and the order of the Environmental Hearing Board is reinstated.

MANDERINO, J., filed a dissenting opinion in which NIX, J., joins.

PACKEL, former J., did not participate in the decision of this case.

## APPENDIX

Decisions from other states upholding fluoridation of water. (See note 9 *supra.*)

*Minnesota State Board of Health v. City of Brainerd,* 308 Minn. 24, 241 N.W.2d 624, *appeal dismissed,* 429 U.S. 803, 97 S.Ct. 35, 50 L.Ed.2d 63 (1976); *Young v. Board of Health of the Borough of Somerville,* 61 N.J. 76, 293 A.2d 164 (1972); *Graybeal v. McNevin,* 439 S.W.2d 323 (Ky.1969); *Opinion of the Justices,* 243 A.2d 716 (Del.1968); *Paduano v. City of New York,* 45 Misc.2d 718, 257 N.Y.S.2d 531, aff'd., 24 A.D.2d 437, 260 N.Y.S.2d 831 (1st Dep't 1965), aff'd., 17 N.Y.2d 875, 271 N.Y.S.2d 305, 218 N.E.2d 339 (1966), *cert. denied,* 385 U.S. 1026, 87 S.Ct. 754, 17 L.Ed.2d 674 (1967); *Attaya v. Town of Gonzales,* 192 So.2d 188 (Ct.App.La.1966); *Hall v. Bates,* 247 S.C. 511, 148 S.E.2d 345 (1966); *Wilson v. City of Mountlake Terrace,* 69 Wash.2d 148, 417 P.2d 632 (1966); *Rogowski v. City of Detroit,* 374 Mich. 408, 132 N.W.2d 16 (1965); *Schuringa v. City of Chicago,* 30 Ill.2d 504, 198 N.E.2d 326 (1964), *cert. denied,* 379 U.S. 964, 85 S.Ct. 655, 13 L.Ed.2d 558 (1965); *Stroupe v. Eller,* 262 N.C. 573, 138 S.E.2d 240 (1964); *City Commission of Fort Pierce v. State ex rel. Altenhoff,* 143 So.2d 879 (Ct.App.Fla.1962), *appeal dismissed,* 154 So.2d 208 (Ct.App.Fla.1963); *Readey v. St. Louis County Water Co.,* 352 S.W.2d 622 (Mo.1961), *appeal dismissed,* 371 U.S. 8, 83 S.Ct. 20, 9 L.Ed.2d 47 (1962); *Wilson v. City of Council Bluffs,* 253 Iowa 162, 110 N.W.2d 569 (1961); *Birnel v. Town of Fircrest,* 53 Wash.2d 830, 335 P.2d 819, *appeal dismissed,* 361 U.S. 10, 80 S.Ct. 71, 4 L.Ed.2d 51 (1959); *Teeter v. Municipal City of LaPorte,* 236 Ind. 146, 139 N.E.2d 158 (1956); *Baer v. City of Bend,* 206 Or. 221, 292 P.2d 134 (1956); *Kraus v. City of Cleveland,* 163 Ohio St.

559, 127 N.E.2d 609 (1955), *appeal dismissed,* 351 U.S. 935, 76 S.Ct. 833, 100 L.Ed. 1463 (1956); *Kaul v. City of Chehalis,* 45 Wash.2d 616, 277 P.2d 352 (1955); *Froncek v. City of Milwaukee,* 269 Wis. 276, 69 N.W.2d 242 (1955); *Dowell v. City of Tulsa,* 273 P.2d 859, 43 A.L.R.2d 445 (Okl.1954), *cert. denied,* 348 U.S. 912, 75 S.Ct. 292, 99 L.Ed. 715 (1955); *Chapman v. City of Shreveport,* 225 La. 859, 74 So.2d 142, *appeal dismissed,* 348 U.S. 892, 75 S.Ct. 216, 99 L.Ed. 701 (1954); *De Aryan v. Butler,* 119 Cal.App.2d 674, 260 P.2d 98 (1953), *cert. denied,* 347 U.S. 1012, 74 S.Ct. 863, 98 L.Ed. 1135 (1954).

MANDERINO, Justice, dissenting.

I dissent. The Department of Environmental Resources (DER) has never decided that drinking water is unsafe when it has been fluoridated nor has it ever decided that drinking water is unsafe when it *has not been* fluoridated. If it had ever decided the issue—either way—all drinking water in the state would have to be treated or not according to the DER's decision. How then can it be said that the DER did not abuse its discretion? I would affirm the Commonwealth Court.

NIX, J., joins in this dissenting opinion.