(No. 56315)

ILLINOIS PURE WATER COMMITTEE, INC., *et al.*, Appellees, v. DIRECTOR OF PUBLIC HEALTH *et al.*, Appellants.

*Opinion filed October 19, 1984.—Rehearing denied November 30, 1984.*

Neil F. Hartigan, Attorney General, of Springfield (Richard W. Cosby, Special Assistant Attorney General, of Dozoryst, Cosby & Brustein, of Chicago, of counsel), for appellants.

G. Edward Moorman, of East Alton, and Jim De-Weese, of Inscore, Rinehardt & Whitney, of Mansfield, Ohio, for appellees.

Peter M. Sfikas and Larry R. Eaton, of Peterson, Ross, Schloerb & Seidel, of Chicago, for *amici curiae* American Dental Association *et al.*

William E. Feurer, of William E. Feurer, Ltd., of Springfield, for *amici curiae* Illinois State Dental Society *et al.*

JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendants, the Director of the Department of Public Health of the State of Illinois, the Director of the Environmental Protection Agency of the State of Illinois, and the Alton Water Company, appealed (87 Ill. 2d R. 302(a)) from the judgment of the circuit court of Madison County holding unconstitutional section 7a of "An Act to provide for safeguarding the public health by vesting certain measures of control and supervision in the Department of Public Health over public water supplies in the State" (Ill. Rev. Stat. 1981, ch. 111½, par. 121g1). The court enjoined the Department of Public Health and the Environmental Protection Agency from enforcing the statute, and enjoined Alton Water Company from fluoridating its public water supply. We allowed defendants' motion to stay enforcement of the judgment pending appeal.

Section 7a provides:

"In order to protect the dental health of all citizens,

especially children, the Department shall promulgate rules to provide for the addition of fluoride to public water supplies by the owners or official custodians thereof. Such rules shall provide for the addition of the fluoride to the water supplies so as to maintain a fluoride content of not less than 0.9 milligram per liter nor more than 1.2 milligrams per liter." Ill. Rev. Stat. 1981, ch. 111½, par. 121g1.

This action was commenced on August 1, 1968, requesting that the Department of Public Health be enjoined from enforcing the fluoridation statute and that Alton Water Company be prevented from introducing fluorides into its system. The complaint alleged that fluoride in public drinking water is dangerous to health and that its use did not prevent dental caries (tooth decay). After several dismissals and reinstatements the complaint was dismissed for failure to state a cause of action. Plaintiffs appealed, and the appellate court, holding that the complaint stated a cause of action, reversed. (*Illinois Pure Water Committee, Inc. v. Yoder* (1972), 6 Ill. App. 3d 659.) In 1975 the plaintiffs joined the Illinois Environmental Protection Agency as a party defendant.

Plaintiffs' seventh amended complaint contained three counts, but only count I survived the trial. Count II, alleging a class action, was dismissed for failure to meet the requirements set forth in section 57.2 of the Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, par. 57.2). Count III, which concerned a plaintiff who alleged that fluoridation denied him freedom of religion under the first and fourteenth amendments to the United States Constitution and article I of the Illinois Constitution of 1970 was also dismissed. In the surviving count (count I), plaintiffs sought a declaratory judgment that section 7(a) was an unreasonable exercise of the police power and unconstitutional. Plaintiffs also sought an order enjoining Alton Water Company from introducing

fluoride into the public water supply and enjoining the Department of Public Health and the Environmental Protection Agency from enforcing the statute. Plaintiffs contended that compliance with the statute denied them their right under article XI of the 1970 Illinois Constitution to a healthful environment, denied them their right under article I, section 12, of the 1970 Illinois Constitution to a remedy for all wrongs, and denied them, without due process of law under the fifth amendment to the United States Constitution, and article I, section 2 of the 1970 Illinois Constitution, their right to health and life.

The record is voluminous. The circuit court heard testimony from 11 witnesses and examined 151 exhibits. In its order, the court reviewed the testimony and concluded that "The evidence breaks down in four (4) basic groups: Allergy and Intolerance, Chromosome Study Findings, Other Chemical and Biochemical Characteristics and Epidemiological Findings." It held that section 7a was unconstitutional as an unreasonable exercise of police power in violation of article I, section 2, and "in violation of the terms and spirit of Article XI sections 1 and 2" of the Constitution of 1970.

With respect to allergy and intolerance, Dr. George Waldbott, called by plaintiffs, described the symptoms of fluoride poisoning. He described several cases of patients diagnosed as having reactions intolerant to fluoride, whose symptoms disappeared when they stopped drinking fluoridated water. He described a study he had conducted in Annapolis, Maryland, following an accidental spill into the public water system of fluoride at a level greatly in excess of the one-part-per-million rate utilized in most fluoridation operations. He asserted that his findings in the study confirmed a connection between fluoride intoxication and drinking water.

On cross-examination Dr. Waldbott admitted that his patients' symptoms could have been psychosomatic. He

admitted that his interviews with his patients were not "double-blind" studies; that is, his patients knew that they had been drinking fluoridated water. He also admitted that he had no formal training in research techniques and that allergic reactions to fluoride are quite rare.

In the area of chromosome-study findings, the plaintiffs offered the testimony of Dr. Aly Mohammed, a professor of biochemistry at the University of Missouri at Kansas City. He testified that his experiments showed a chromosomal aberration rate for mice, in bone marrow and spermatocyte cells, at various dosages of fluorides and at various times during his study. He concluded that sodium fluoride can cause chromosomal changes in mice even at concentrations as low as one part per million in drinking water. He stated that fluoride could be considered a mutagen, many of which are carcinogenic, and thus fluoride could be a carcinogen.

Dr. John Yiamouyiannis testified for plaintiffs and discussed other chemical and biochemical characteristics of fluoride. He stated that fluoride inhibits those enzymes which are responsible for the repair of damaged DNA molecules. He explained that this characteristic might make fluoride itself a carcinogen or that fluoride might give a selection advantage to existing cancer cells over normal cells.

Concerning epidemiological findings, Dr. Dean Burk, a cytochemist formerly employed by the National Cancer Institute, and Dr. Yiamouyiannis testified as to the findings of their study which showed an increase in cancer deaths following the introduction of fluoridation in certain cities. They studied the cancer death rates of the 10 largest cities in the United States that fluoridated their water supplies during the period from 1952 to 1956, using as a control group the 10 largest cities that remained nonfluoridated up to at least 1969. Dr. Yiamouyiannis explained that differences in the age, sex, or race of the

populations could not have accounted for the difference in the cancer death rates.

In cross-examination it was admitted that neither Dr. Burk nor Dr. Yiamouyiannis had any formal training in the fields of epidemiology or statistics; that both were experts in other fields; and that this epidemiological study was their first. Dr. Burk admitted that he had an antifluoride stance before he undertook this study. Likewise, Dr. Yiamouyiannis acknowledged that he was the science director of the National Health Federation, and that group had hired him to be a fluoride fighter. Dr. Yiamouyiannis also admitted that he was paid by the Illinois Pure Water Committee to testify in this case and that this group is adamantly opposed to artificial fluoridation. The trial court noted that "Dr. Yiamouyiannis not only testified as an expert on behalf of plaintiffs, but also that he was present every day at the trial and seated at plaintiffs' counsels' [sic] table where he appeared to be giving advice and directing strategy to some degree. The conclusion was that Drs. Burk and Yiamouyiannis could hardly be termed 'disinterested' scientists."

Defendants called Dr. Marilyn Lantz, Assistant Professor of Dentistry at the Dental School of Southern Illinois University. In addition to her degree of Doctor of Dental Medicine, she holds the degree of Ph. D in biochemistry. She disputed the findings to which Drs. Waldbott and Mohammed testified. Dr. Charles E. Bennett, employed by the Illinois Department of Health, who holds the degree of Ph. D in ecology, criticized the methods used by Drs. Burk and Yiamouyiannis in their study and pointed out that the statistics differed from those compiled by the U.S. Department of Health, Education and Welfare. He stated that the statistics showed that the difference in the cancer-death rates between nonfluoridated and fluoridated cities was insignificant.

Dr. William Sly, a physician and professor of Medicine, Genetics and Pediatrics at Washington University School of Medicine, called by defendants, pointed out defects in the exhibits upon which Dr. Mohammed based his conclusions, and errors in the conclusions which Dr. Mohammed drew from them.

Defendants contend that the statute providing for mandatory fluoridation of the public water supply is a reasonable exercise of the police power. They argue that enforcement of the statute may not be enjoined merely on the showing that it is debatable whether requiring fluoridation is a valid public health measure. Plaintiffs contend that the usual standards applicable to business, social and economic legislation do not apply here. They argue that fundamental rights, namely the right to life and health, have been placed in jeopardy without due process of law, and the validity of the statute can be upheld only if it is shown that there is a compelling State interest which requires it. Furthermore, they contend, the statute must be so narrowly drawn as to express only the legitimate State interests at stake.

In *Schuringa v. City of Chicago* (1964), 30 Ill. 2d 504, the plaintiff taxpayers sought to enjoin the fluoridation of the defendant city's water supply. Plaintiffs contended that fluoridation infringed upon fundamental liberties protected by constitutional guarantees of due process of law. The court said:

"**** settled and certain is the concept that a police measure, to be beyond the pale of constitutional infirmity, must bear a reasonable relation to the public health or other purpose sought to be served, the means being reasonably necessary and suitable for the accomplishment of such purpose, (*Strub v. Village of Deerfield*, 19 Ill. 2d 401; *Vissering Mercantile Co. v. Annunzio*, 1 Ill. 2d 108; *Lawton v. Steele*, 152 U.S. 133, 38 L. Ed. 385,) and the principle that courts will not interfere with legislation falling within the orbit of a municipality's police power

unless there is a palpably arbitrary or unfair exercise of the power. (*City of Chicago v. R. & X. Restaurant*, 369 Ill. 65; *Chicago Cosmetic Co. v. City of Chicago*, 374 Ill. 384.)" (*Schuringa v. City of Chicago* (1964), 30 Ill. 2d 504, 509.)

The court found that artificial fluoridation of water was reasonably related to the public health, and that the program adopted by Chicago (similar to the one in question here) was necessary and suitable for the protection of public health. (30 Ill. 2d 504, 516.) The court held that the plaintiffs had failed to sustain their burden of proving that the resolution requiring fluoridation was unreasonable, noting that "the wisdom, necessity and expediency of police regulations are no concern of the courts, but are matters primarily for the legislative body of the municipality, and courts are without power to interfere merely because they believe a different regulation might have been wiser or better. *City of Chicago v. Waters*, 363 Ill. 125; *Chicago Cosmetic Co. v. City of Chicago*, 374 Ill. 384." *Schuringa v. City of Chicago* (1964), 30 Ill. 2d 504, 515-16.

Here, as in *Schuringa*, we find that plaintiffs have not sustained their burden of showing that the fluoridation statute is so unreasonable as to be invalid. We note the comment contained in the circuit court order that, "In view of the plaintiffs' evidence, even though it has long been recognized that artificial fluoridation of public water supplies helps fight tooth decay, a risk exists of serious health hazards." At most, plaintiffs have shown that there may be some risk of a higher incidence of cancer and, to a lesser degree, other diseases and conditions. The extent of this risk, however, is uncertain. In discussing the evidence, the circuit court noted that "the debate has been lively and continuous and no one can reasonably argue that important health, safety or environmental interests lie on only one side of the debate."

We construe the circuit court's comment to mean that plaintiffs have shown, not that the risk was so great that fluoridation was unreasonable, but that the question was shown to be debatable. Under these circumstances plaintiffs have failed to show an unreasonable exercise of the police power. We note that many courts, in the interest of public health, have upheld fluoridation as a proper exercise of the State's police power. *Commonwealth v. City of Lebanon* (1978), 482 Pa. 66, 73 n.9, 393 A.2d 381, 384 n.9 (see cases cited in appendix to decision).

Plaintiffs contend that because fluoridation imposes upon a fundamental right guaranteed to them by the United States Constitution, strict scrutiny of the statute is required. This contention, however, has been rejected (Bellassai v. McAvoy (N.D. Ohio June 1, 1981), No. C80—376A, *aff'd* (6th Cir. May 24, 1982), Nos. 81—3371, 81—3372, *cert. denied* (1982), 459 U.S. 971, 74 L. Ed. 2d 282, 103 S. Ct. 301), and we agree. See also *Kraus v. City of Cleveland* (C.P. Cuyahoga County 1953), 55 Ohio Op. 6, 116 N.E.2d 779, *aff'd* (1955), 163 Ohio St. 559, 127 N.E.2d 609, *appeal dismissed* (1956), 351 U.S. 935, 100 L. Ed 1463, 76 S. Ct. 833.

Plaintiffs contend, too, that because the 1970 Illinois Constitution guarantees them the right to a healthful environment (Ill. Const. 1970, art. XI, secs. 1, 2), strict scrutiny of the statute is required. Defendants concede that these provisions give standing to individuals to bring actions for damages to the environment where previous common law doctrine restricted standing in such cases to public officials, but they argue that these provisions have no effect upon the level of scrutiny to be applied to the statute.

Plaintiffs cite no authority for the proposition that sections 1 and 2 of article XI create a "fundamental" right to a healthful environment, and do not explain why we should subject statutes affecting the environment to

a higher level of scrutiny. In the absence of more persuasive reasoning, we decline to do so.

On this record, we conclude that the evidence shows, at most, the existence of a debate upon the dangers and benefits of fluoridation. While the circuit court was correct in stating that "to carry the burden of proof in this case the plaintiffs' evidence need not be conclusive that fluoride will cause adverse health effects," we cannot say that the evidence here is sufficient to declare that the fluoridation statute is an unreasonable exercise of the police power. "At best, however, the evidence with respect thereto presents only a debatable question where there is room for difference of opinion, and *** it is enough to say it is an area in which the legislative judgment must prevail." *Schuringa v. City of Chicago* (1964), 30 Ill. 2d 504, 516.

For the foregoing reasons, the judgment of the circuit court of Madison County is reversed.

*Judgment reversed.*